# Owners of Lands

## *v.*

## The People *ex rel.* Madison T. Stookey.

*Filed at Mt. Vernon February 5, 1885.*

1. DRAINAGE ACT—*of 1879—constitutionality—as to legislative appointment to office.* Section 43 of the act entitled "An act to provide for the construction, maintenance and repair of drains and ditches by special assessments on property benefited thereby," approved May 29, 1879, does not violate section 10 of article 10 of the State constitution, which prohibits the legislature from appointing or electing any person to an office. The act creates no new office to be filled, but simply imposes additional duties upon officers already elected by the people.

2. SAME—*drainage commissioners as "corporate authorities"—as to the mode of their appointment—whether within the constitution.* The drainage commissioners provided for in the act of May 29, 1879, being the county commissioners, are not an illegal municipal corporation because not elected by the legal voters of the drainage district, or appointed in some mode to which they have given their assent.

3. The only debt the general Drainage act authorizes the corporate authorities to create, must be paid upon property specially benefited by the proposed improvement. Such assessment is not a personal charge, but is only against the property. It is the ownership in the real estate assessed, and not the public, merely, as such, that may be injuriously affected; and this is a sufficient reason why the corporate authorities need not be required to be elected by the voters of the district.

4. The statute requires, as a condition precedent to the formation of a drainage district, that a majority in number of the adult owners of lands lying in the proposed district, and who shall be owners, in the aggregate, of more than one-third of the lands in such district, to unite in the petition to organize such district, and allows all other land owners in the district to contest the formation of the district. In this way an assent to the formation of the district is shown, and the land owners' rights may be protected.

5. The constitutional amendment adopted in 1878, imposes no limitations or restrictions upon the legislature as to the agencies to be used in the creation of a drainage district, and under such amendment the legislature has the power to declare who shall constitute the corporate authorities of such districts; and it is *such* corporate authorities,—not those elected by the voters, only,—that are to be vested with power to make the improvements by special assessments.

6. SAME—*constitutionality—as depriving one of property without due process of law.* Where a party whose land has been specially assessed for benefits under the general Drainage law, is afforded ample opportunity of being heard upon every question of fact and of law, and he fails to urge any just ground of defence, and suffers judgment to go against his land, and it is to be sold, he can not be said to have been deprived of his property without due process of law.

7. SAME—*constitutionality—as conferring judicial powers on non-judicial officers.* Section 46 of the Drainage act of 1879, which gives an appeal from the drainage commissioners' orders confirming special assessments, to the county surveyor, county treasurer and sheriff, who are constituted an appeal board to hear and decide all appeals, and giving a further appeal from that board to the county court, is not unconstitutional, as conferring judicial powers on a non-judicial body. The board of appeals does not exercise judicial powers, within the meaning of those words in article 3 of the constitution. It construes no law, and no legal rights are submitted to and adjudicated by it.

8. SAME—*powers of board of appeal.* The board of appeal provided for in the Drainage act of 1879, is limited to inquiring into, passing upon and reporting on questions of fact,—namely, the amount of benefits which will accrue to each tract of land, (and where the tract is both damaged and benefited, whether the one exceeds the other, and how much,) and whether the assessment made by the commissioners is correct.

9. SAME—*powers of county court on appeal from assessment.* An appeal from the board of appeals to the county court can only bring up for review that which was considered and acted upon by the board from which the appeal was taken. Whether the appeal is by one party or the other, the question before the county court will be substantially the same.

10. SAME—*judgment on appeal—whether conclusive on legal questions.* The decision of the board of review, and of the county court, on appeal, can

only be *res judicata* as to the questions of fact brought up by the appeal. Legal questions as to the regularity of the proceedings may be raised on the application for judgment for the non-payment of the assessment.

11. Same—*local or special legislation in respect to drainage—constitutionality.* There is nothing in the constitution which prohibits local or special legislation in respect to drainage. Article 11 of that instrument, entitled "Corporations," relates to private corporations alone, and not to local municipal corporations. "Drainage" is not named in the direct prohibition of special or local legislation, in section 22, article 4.

12. General legislation, *as distinguished from that which is special —who may determine as to its applicability.* The general clause in the section last referred to, that when a general law can be made applicable no special law shall be enacted, addresses itself to the General Assembly alone. When that body has concluded a special law is necessary, except in the cases expressly prohibited, *its conclusion is not subject to judicial review.*

13. Municipal corporations—*legislative control over.* The General Assembly, when not expressly restricted by constitutional provision, has the power to define and prescribe what shall be the corporate authorities of local municipalities, and even to dispose of their revenues.

14. Judicial power—*defined.* Judicial power is the power which adjudicates upon and protects the rights and interests of individual citizens, and, to that end, construes and applies the laws. The term has never been applied to those cases where judgment is to be exercised as incident to the execution of a ministerial power.

Appeal from the County Court of St. Clair county; the Hon. William J. Underwood, Judge, presiding.

Mr. J. M. Dill, and Messrs. Flannigen & Canby, for the appellants:

The drainage district in this case was organized under section 43, chapter 42, of the Revised Statutes, and we think it an illegal corporation because the drainage commissioners therein named are directly appointed by the legislature, which is prohibited by the constitution from making any appointment to office. Const. art. 5, sec. 10; *Harward* v. *St. Clair Levee and Drainage Co.* 51 Ill. 136; *State* v. *Kennon,* 7 Ohio St. 546; *Wood* v. *United States,* 15 Ct. of Claims, 151.

By section 31, article 4, of the constitution, as amended in 1878, the legislature is authorized to "provide for" the organ-

ization of drainage districts,—not to organize them. The legislature thus may vest the corporate authorities thereof with power, etc., but has no power given to appoint corporate authorities.

The drainage commissioners are an illegal corporation because not elected by the people of the drainage district, or appointed in any mode to which they have given their assent. The "corporate authorities" who may impose taxes, etc., are municipal officers, who are either directly elected by the people, or appointed in some manner to which they have assented. *Harward* v. *St. Clair Levee and Drainage Co.* 51 Ill. 136; *Hessler* v. *Drainage Commissioners*, 53 id. 113; *Gage* v. *Graham*, 57 id. 144; *Updike* v. *Wright*, 81 id. 50; *Cornell* v. *People ex rel.* 107 id. 372.

The amendment of the constitution of 1870, giving the legislature power to vest the "corporate authorities" of such districts with power to make drains, etc., by special assessments, is a limitation upon the power of the legislature to vest such right in any other than the corporate authorities.

The board of appeals created by section 46 of the act, is not authorized by the constitution and laws of the State, and is an illegal tribunal—a non-judicial body, invested with judicial functions. *Poppen* v. *Holmes*, 44 Ill. 360; *Bullock* v. *Goemble*, 45 id. 218; *Hall* v. *Marks*, 34 id. 358.

The constitution having vested and distributed the whole judicial power in certain courts, it is not competent for the legislature to confer such power upon any other than the courts therein named. *People* v. *Maynard*, 14 Ill. 422; *Beesman* v. *City of Peoria*, 16 id. 484; *Milwaukee Industrial School* v. *Supervisors*, 40 Wis. 328; *Baton Rouge* v. *Dearing*, 15 La. Ann. 208; *Chandler* v. *Nash*, 5 Mich. 409; *Waldby* v. *Callendar*, 8 id. 430; *Lafou* v. *Dufrocq*, 9 La. Ann. 350; *Hodgson* v. *Milward*, 3 Grant, (Pa.) 406.

The drainage commissioners may appeal from this board on every ground, while the party whose lands are assessed is

allowed an appeal only on one ground—that the assessment is greater than the benefits. Hurd's Stat. 1883, chap. 42, sec. 26.

The "due process of law" except by which a man can not be deprived of life, liberty or property, is construed to be a law or provision for a hearing before condemning, and which arrives at a judgment through what is ordinarily known as judicial process, upon a trial, according to the course of the common law. *Warden* v. *Mount,* 78 Ky. 89; *Taylor* v. *Porter,* 4 Hill, 140; *Westervelt* v. *Gregg,* 12 N. Y. 209; *Bank of Columbia* v. *Okely,* 4 Wheat. 244.

The legislature is prohibited from passing any special or local laws, where a general one can be made applicable. Const. art. 4, sec. 22.

If these two acts can not coëxist, and the manifest object of the legislature be carried out, both must be declared void. *Barressalbo* v. *People,* 17 Ill. 101; *Stribling* v. *Prettyman,* 57 id. 372; *Way* v. *Way,* 64 id. 406.

Messrs. Hay & Knispel, for the appellee:

In the case of *Moore* v. *People,* 106 Ill. 376, this court held this act to be constitutional. Appellant having signed the petition upon which the formation and organization of the district were based, he is precluded from denying the validity of the act. *Blake* v. *People,* 109 Ill. 504; Cooley's Const. Lim. 181.

The legislature, alone, is vested with the discretionary power of saying when a general law can be made applicable.

It is the statute that creates the corporation,—not the county court; but the General Assembly is left unrestricted by the constitutional amendment as to the manner of creating drainage corporations.

The legislature has not appointed any officers, but has simply imposed additional duties upon officers elected by the people, and for the exercise of these duties it has designated

the very body elected by the people to perform the duties most intimately connected with these additional duties. See the case of *People* v. *Salomon*, 51 Ill. 50, which was approved in *People* v. *Brislin*, 80 Ill. 423, and *Dunham* v. *People*, 96 id. 331.

It is the common practice, in all States, to appoint a "board of review" or "board of appeals" to hear objections from taxpayers, and to give them an opportunity to be heard before the assessment becomes fixed and final against them. Such boards are not judicial bodies. It is in the discretion of the law making power to say of what persons or officers these boards shall consist. Cooley on Taxation, 265, *et seq.*, 528, 529; *Peoria* v. *Kidder*, 26 Ill. 351.

There can be no constitutional objection to section 46 of the Drainage act. We have the same provisions in the Revenue act, and they have been repeatedly upheld by this court. *People* v. *Big Muddy Iron Co.* 89 Ill. 116; *Felsenthal* v. *Johnson*, 104 id. 21.

So the act establishing the State Board of Equalization was held constitutional. *People* v. *Solomon*, 46 Ill. 333.

It is clearly within the power of the legislature to say who shall ascertain and determine the extent of the special benefits, and who shall assess them. (*Crawford* v. *People*, 82 Ill. 557.) The authorities cited by appellants under this head have no bearing upon the case whatever. Cooley on Taxation, 528, 529.

The objection that this section of the statute deprives the land owner of his property without due process of law, is totally unfounded. Cooley on Taxation, 429, and authorities cited.

The board of appeals has only to say whether or not the amount of taxes assessed is reasonable and just. Ample opportunity is given to the land owner to question every step taken in the organization of the district, and for any illegality he has adequate remedy. That remedy is the writ of *certi-*

*orari.  Low* v. *Railroad Co.* 18 Ill. 324; *Commissioners* v. *Supervisors of Carthage*, 27 id. 140 ; *People* v. *Wilkinson*, 13 id. 660 ; *Bailey* v. *McCain*, 92 id. 277.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was an application for a judgment for the amount of a special assessment to construct a drain.  The drainage district was organized under the act entitled "An act to provide for the construction, maintenance and repair of drains and ditches, by special assessments on the property benefited thereby," approved May 29, 1879.  The judgment below is sought to be reversed upon objections, alone, to the constitutionality of that act.  In passing upon these objections, it will be most convenient to follow the order in which they are presented and discussed in the printed arguments before us.

*First*—It is contended that section 43 is within the inhibition of section 10, article 10, of the constitution, which prohibits the General Assembly from appointing or electing any person to an office.  This assumes what can not, in our opinion, be maintained, namely, that by that section some one is appointed or elected to an office.  Obviously, before there can be an appointment or an election to an office, the office itself must have an existence, either by virtue of the constitution or by virtue of some statute.  It is not pretended that the constitution creates the office of "drainage commissioner," or that such office is created by any other statute than the act of May 29, 1879, under consideration, but only that it is created by this section of that act.  But the language of this section assumes to create no office.  It purports, simply, to add duties to an office created by the constitution.  Its language is : "The county commissioners, in counties not under township organization, shall be the drainage commissioners in and for their respective counties," etc.  In other words, the county commissioner shall, in addition to the duties previously

devolved upon that office, discharge the duties of drainage commissioner, which duties are further specifically defined in other sections. All this is to be done by the county commissioner because he is county commissioner, and not because he holds some other office. It would seem quite apparent the meaning would have been precisely the same if, throughout the act, the term, "drainage commissioner," had been entirely omitted, and the words, "county commissioner," had been substituted where it occurs.

The question is not new in this court. The constitution creates the offices of treasurer and sheriff. The General Assembly has enacted that "the treasurers of counties under township organization, and the sheriffs of counties not under township organization, shall be *ex officio* county collectors of their respective counties." (Rev. Stat. 1874, p. 881, sec. 144.) No material distinction can be observed between this language and that in the 43d section of the Drainage act, so far as relates to the additional duties imposed upon an office already in existence. The word, "*ex officio*," only expresses in the one case what is necessarily implied in the other. If county commissioners are drainage commissioners merely because of the office, which, as we have shown, is the undoubted meaning of the language, then they are *ex officio* drainage commissioners. In *Kilgore* v. *The People*, 76 Ill. 550, in passing upon the question whether collector is an office, and after referring to the section of the statute relating thereto, above quoted, we said: "This is a duty that the legislature had the right to impose upon these officers, and to require of them additional bonds for the performance of such additional duties. No office was created thereby, but a legislative order that all county treasurers in certain counties shall, by virtue of their office as treasurer, collect the revenue of the county. Should one of these treasurers fail to give bond for the faithful performance of the duty of collecting, the office may be declared vacant. What office? The office of treasurer, there being

none other." There was, also, like ruling in *Wood* v. *Cook,* 31 Ill. 271.

The county commissioners are elected by the people of the county,—those for whom they are county commissioners,—and are not appointed or elected by the General Assembly, any more than are sheriffs and treasurers. We do not conceive that the addition of the language that they, (*i. e.,* the county commissioners,) when acting as drainage commissioners, "shall be a body politic and corporate," and that in all legal proceedings their corporate name shall be "the drainage commissioners of...............county, State of Illinois," adds any force to the objection. The county commissioners were a municipal corporation before the date of this enactment, and they still remain such. The addition of duties to that corporation, and declaring that as to such additional duties, in all legal proceedings, it shall be called by a different name, it is quite obvious, does not change the constituents of the corporation. It neither creates new offices nor appoints individuals to offices already created.

In *Harward* v. *St. Clair Levee and Drainage Co.* 51 Ill. 130, and other cases governed by like principle, cited in argument, the law created an office, and designated the particular individuals who should fill it, and hence are not analogous to the present case. Precisely the same objection was made, and overruled, in *Kilgour* v. *Drainage Commissioners,* 111 Ill. 342, and in *Huston* v. *Clark,* 112 Ill. 344, and we might have contented ourselves by simply saying *stare decisis;* but the importance of the question, and the ability and earnestness of the arguments here made in support of the objection, have induced us to reconsider the question, which we have accordingly done, with such care as we can; and after having done so, our conclusion still remains unchanged.

*Second*—The next objection is, "these drainage commissioners are an illegal corporation, because they are not elected by the people of the drainage district, or appointed in any

mode to which they have given their assent." This is based upon the decisions in *The People ex rel.* v. *Mayor,* 51 Ill. 17, *Harward* v. *St. Clair Drainage Co.* id. 130, and kindred cases, where the decision, or, at least, intimation, of the court was, that a law creating a municipal corporation with power to incur debts which would have to be paid by general taxation, to be obligatory must first receive the sanction of a majority of the legal voters of the district. No express constitutional provision required this, but the conclusion was deduced from the restriction imposed upon the General Assembly by section 37, article 3, of the constitution of 1848, which prohibited the State from creating a debt exceeding $50,000 without the consent of the people, manifested by a vote at a general election. The vote of the people of the district was required, because any debt created would fall upon the taxable property of the entire district, and might be such as to bankrupt the tax-payers. But in *The People* v. *Harper,* 91 Ill. 357, we said, speaking of this requirement: "But this is a protection against taxation, only, and not a limitation upon the powers of the State government in selecting agencies through which to protect the people against wrong and injustice, where no local burden is imposed." And in numerous other decisions this court has announced, in general terms, the power of the General Assembly, when not expressly restricted by constitutional provisions, to define and prescribe what shall be the corporate authorities of local municipalities, and even to dispose of their revenues. *The People* v. *Wren,* 4 Scam. 273; *County of Pike* v. *State,* 11 Ill. 202; *County of Richland* v. *County of Lawrence,* 12 id. 1; *Dennis* v. *Maynard,* 15 id. 477; *Town of Mt. Carmel* v. *Wabash County,* 50 id. 69.

The reasoning controlling in *The People ex rel.* v. *Mayor, Harward* v. *St. Clair Drainage Co.,* and other like cases, can have no application to the statute now before us, for the only debt it authorizes to be created must be paid by a special assessment upon the property specially benefited by the pro-

posed improvement. Such an assessment is not a personal charge, but one, only, against the property specially assessed. (*Craw et al.* v. *Village of Tolono et al.* 96 Ill. 255.) The property specially assessed may belong to a very few of the voters of the district. The theory of the special assessment is, certain real estate will· be benefited by the proposed improvement more than it will cost to make it, and it, therefore, must bear the burden. It is the ownership in that real'estate,— not the public, merely, as such,—that may be injuriously affected by that special assessment. And this ownership is, in fact, better protected by this statute than it would be by a popular vote of the district, for the statute requires, as a condition precedent to the organization of the drainage district, that a. majority in number of the adult owners of lands lying in the proposed district, and who shall be owners, in the aggregate, of more than one-third of the lands lying in said district, shall unite in the petition for the formation of the district, and allows all other land owners in the district an opportunity to appear and contest the formation of the district. When the people adopted the amendment to the constitution, at the November election, in 1878, they expressly empowered the General Assembly to "provide for the organization of drainage districts, and to vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under laws of this State, by special assessments upon the property benefited thereby." We held in *Blake* v. *The People,* 109 Ill. 505, that the purpose of the adoption of this amendment was to obviate the objections held fatal in *Updike* v. *Wright,* 81 Ill. 49, and *Webster* v. *Levee Commissioners,* (unreported,) and we said: "We are unable to discover, here, any limitation or restriction upon the General Assembly as to the agencies to be used in the creation of the corporation." Power to provide for the organization of drainage districts plainly carries with it, as an indispensable incident,

power to declare what shall be the corporate authorities of those districts, and it is *such* corporate authorities,—not corporate authorities elected by the voters of the drainage district alone,—that is to be vested with power to make the improvements by special assessment. Had the General Assembly, instead of providing as it did by this enactment, provided that there should be elected, by the legal voters of the drainage district, certain persons to constitute the corporate authorities thereof, then, unquestionably, only those persons could have been empowered to make the special assessment. But the General Assembly was not bound to so provide, and did not so provide. Under section 9, article 9, of the constitution, it is provided that cities, towns and villages may be vested with power to make local improvements by special assessments, and that power has been acted under in almost, if not quite, every municipal corporation throughout the State; but it was never supposed, in such cases, that the proposed improvement must, to be valid, be territorially coëxtensive with the municipal authority under which it is made. Such a requirement would, of necessity, render nugatory the power to make special assessments, because they can only be local, and where there are special benefits. It would, in all cases, be extremely difficult, and in many cases impossible, to prescribe a district, by law, in which corporate officers should be elected, with the exact boundaries of the beneficial influence of a drain or levee, in advance of the legal ascertainment, by judicial trial or otherwise, of what property is specially benefited by such drain or levee. But it is sufficient no clause of the constitution contains such a requirement, and no clause of that instrument prohibits the making the county commissioners the corporate authority for every drainage district in the county, although they are elected by the votes of others in the county, as well as of those of this drainage district. It is of constant practice, in our government, that some officers, elected by the whole people, exercise local powers as well as general

powers,,as in the case of the State officers, and that other officers, elected by local constituencies, exercise general powers throughout the State, as, members of the General Assembly, members of the State Board of Equalization, and judges of the Supreme Court; and it is exceptional, rather than general, that official duties shall be neither more limited nor more extended than a single undertaking embracing every part of the precise territory of the election district of the officers, as this objection implies.

*Third*—Another objection urged with much earnestness is, "the board of appeals created by section 46 is not authorized by the constitution, and is an illegal tribunal—a non-judicial body, invested with judicial functions." The supposed obnoxious section reads:

"Appeals from the orders of drainage commissioners confirming any special assessments in counties not under township organization, may be taken by any person interested, who is not satisfied with the decision of the commissioners, to the county surveyor, county treasurer and sheriff, who shall constitute a board of appeals, who shall meet, when notified by the clerk, for the purpose of hearing appeals in such cases; and at such meeting they shall proceed as hereinbefore provided for supervisors when hearing appeals in like cases. Either party aggrieved by the action of the board of appeals may appeal therefrom to the county court, on the same conditions, under the same restrictions and with the like effect as hereinbefore provided for appeals from supervisors."

The objection is claimed to be sustained by article 3 of the constitution, which ordains that "the powers of the government of this State are divided into three distinct departments, —the legislative, executive and judicial,—and no person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." The constitution nowhere undertakes to define what is here meant

by "judicial power," but leaves us to ascertain its meaning otherwise. It has been defined, in general terms, (and, as we think, with sufficient accuracy for the purposes of the present question,) "the power which adjudicates upon and protects the rights and interests of individual citizens, and to that end construes and applies the laws." (Cooley's Const. Lim. 1st ed. 91.) It has never been held to apply to those cases where judgment is exercised as incident to the execution of a ministerial power, nor has it ever been held the exercise of ministerial power by the courts, within the meaning of this article, where they have been compelled to exercise a ministerial act as an incident to the exercise of judicial power. Thus, sheriffs exercise judgment,—and therefore, strictly speaking, act judicially,—in hearing statements and determining as to the value of property on which to levy, and as to the sufficiency of security offered upon the execution of bail bonds; and justices of the peace exercise ministerial powers in issuing summons and executions, and circuit judges in issuing writs of *habeas corpus.* Cooley, in his work on Torts, page 375, says: "Official duties are supposed to be susceptible of classification under the three heads of legislative, executive and judicial, corresponding to the three departments of government bearing the same designations; but the classification can not be very exact, and there are many officers whose duties can not properly, or, at least, exclusively, be arranged under either of these heads. A single case may suffice as an illustration. The officers chosen to levy and apportion taxes for the inferior municipal subdivisions of the State are, in some cases, authorized, first, to determine what taxes shall be levied within the municipality for the year; second, to value the property which is to be assessed for these taxes; third, to apportion the taxes as between the several items of property assessed; and fourth, to receive from their superior officers the statements of taxes to be assessed for more general purposes, and to apportion these in the same way. The first of

these duties partakes of the legislative, the second of the judicial, the third and fourth of the executive, but, in strictness, none of them can be classed as belonging specially to either department of the government, and the officers who perform them are usually designated administrative officers." In *The People* v. *Percells,* 3 Gilm. 59, and *Hawthorn* v. *The People,* 109 Ill. 302, it was held statutes conferring power upon clerks of courts to judge of the sufficiency of bonds did not confer judicial power, within the meaning of this article of the constitution, notwithstanding the acts to be performed required the exercise of judgment and discretion, and were in their nature, therefore, judicial. So, also, it was held in *Campbell* v. *Head,* 13 Ill. 122, that the assessment of damages by the court, under the 6th section of the Replevin act then in force, and in *Ross* v. *Irving,* 14 Ill. 171, that the assessment of damages by commissioners, under the "Occupying Claimant's law," were not judicial acts, because the inquiry was not to settle the fact of liability, but merely to determine its amount. In *Nealy* v. *Brown,* 1 Gilm. 10, the laying out and opening of roads by county commissioners are held not to be an exercise of judicial powers. In *Rowe* v. *Bowen,* 28 Ill. 116, it was held the trial of the rights of property before a sheriff and jury is not a judicial proceeding, notwithstanding an appeal is allowed therefrom to the circuit court. This was approved and followed in *Bureau Co.* v. *Chicago, Burlington and Quincy Railroad Co.* 44 Ill. 229, where an appeal was allowed from a board of supervisors, a non-judicial tribunal, in a case of an assessment, or, rather, of valuation of property assessed for taxes. We have held that assessors, in valuing property for taxation, and boards of supervisors and boards of equalization in reviewing such valuations or in valuing as original assessors, act judicially, and yet it was never claimed or pretended that they are courts, or usurp judicial powers in so doing. (*Spencer* v. *The People,* 68 Ill. 510; *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 id. 595.) In *The People*

*ex rel.* v. *Supervisors*, 47 Ill. 263, it was said that the decision of a board of supervisors that a bridge at a particular point is a necessity, is *res judicata* as to that fact,—and this without holding that the board of supervisors was a court, or that it was exercising judicial powers, within the meaning of the article of the constitution now before us. In *Wright* v. *City of Chicago*, 48 Ill. 285, the question arose, in principle, precisely as it does here, on the report of the commissioners on a special assessment, and we then said, among other things : "These commissioners were acting in a *quasi*-judicial capacity, as they were required to investigate, deliberate and decide." In *Rich* v. *City of Chicago*, 59 Ill. 295, it was said, in answer to the objection that commissioners could not, constitutionally, be empowered to assess the damages and benefits to property affected by the improvement : "We are, however, of the opinion that this proceeding, which is for the assessment of the damages against property specially benefited, is open to no constitutional objection. The 9th chapter of the charter makes it indispensable to a sale of the real estate for the payment of such an assessment, that a judgment of some court of general jurisdiction be had upon the warrant. The acts of the commissioners may therefore be considered as ministerial, and not judicial. They are the means by which the proceedings are initiated and the cause brought before the court, and for that purpose are valid." In *Crawford* v. *The People ex rel.* 82 Ill. 557, the trustees of the town of Cicero appointed commissioners to assess damages and benefits to property affected by the opening of a street. The question of constitutional power was raised, and it was held it was within the power of the legislature to say who should ascertain and determine the extent of the special benefits, and who should assess them. A like ruling was made in *Lake* v. *City of Decatur*, 91 Ill. 597, where commissioners were appointed by the county court.

In practice, in very many other cases, proceedings have been held valid resting upon the decisions of just such tribunals as this, although the constitutional objection was not discussed and considered. Although the language of the judges, in speaking of the character of the duties, has not always been identical, the result has, without exception, been to sustain the action of the board. The tribunal does not exercise judicial power, within the meaning of that word as used in the third article of the constitution. The power exercised is ministerial, only, although, as an incident to its exercise, the board is required to do a judicial act, or, rather, an act which is, in its nature, judicial. No law is construed or applied by the board, and no legal rights are submitted to and adjudicated by it,—without which, we have seen, judicial power is not exercised. The cases cited by counsel for appellant assert nothing to the contrary. In *Poppen* v. *Holmes,* 44 Ill. 360, and *Bullock* v. *Goemble,* 45 id. 218, the effect of the proceeding was, directly, to divest title, and therefore necessarily must be supported by an adjudication,—an application of the law to the facts, and an authoritative declaration of the result, which could only be done by a court. In *Hall* v. *Marks,* 34 Ill. 358, a clerk,—a mere ministerial officer,—assumed to render a judgment, which can only be done by a court. In the other two cases cited,—*The People* v. *Maynard,* 14 Ill. 422, and *Beesman* v. *City of Peoria,* 16 id. 484,—it was simply held that the adoption of the constitution of 1848 repealed certain laws investing mayors of cities with judicial powers.

*Fourth*—Another objection is, that under the 20th section of the act the drainage commissioners are permitted to appeal to the county court upon any and every ground which may show that the judgment of the board of appeals is illegal and erroneous, but the land owner can appeal only upon the ground that his assessment is greater in amount than the benefits accruing to his lands, etc. This objection is, in our

opinion, the result of a misapprehension. As we have already held, the board of appeals exercises no judicial powers. Its functions are limited to inquiring into and passing upon and reporting questions of fact, namely, the amount of the benefits which will accrue to each tract of land, (and, when the same tract of land is both damaged and benefited, whether the benefits exceed the damages,) and whether the assessment made by the drainage commissioners is excessive. This is quite apparent from sections 14 and 20. An appeal to the county court can, in its nature, bring up for review only that which was considered and acted upon by the board from which the appeal is taken. The only question in which the land owner can have any interest justifying an appeal to the county court is, that the assessment is greater in amount than the benefits accruing to the lands by the construction of the proposed work. If the assessment is excessive, it must be greater in amount than such benefits. If it is not excessive, but is less in amount than such benefits, he has no ground to complain of the action of the board of review, and no wrong is done him in denying him an appeal in such instance. It is not expressly said on what ground the drainage commissioners may appeal, but, plainly and necessarily, it must result on directly the reverse grounds,—that is, upon the ground either that the land benefited has not been assessed in any amount, or has been assessed too low. There are no other grounds upon which they could have an interest in appealing. Whether the appeal, then, shall be by the one party or the other, the questions before the county court, on appeal, must be substantially the same. Legal questions, apart from the action of the board of review and the county court, as to the regularity of the proceedings, can, of course, be raised, when, as now, judgment against the lands for non-payment of the assessment is asked. The decision of the board of review, and of the county court, on appeal, can only, in any view, be *res judicata* as to the question brought up by the appeal.

It is a sufficient answer to the objection that this section deprives the land owner of his property without due process of law, that, if the view we have taken is correct, it is a misapprehension.    He is allowed, abundantly, to be heard upon every question of fact, and if he had legal objections which he has not here urged, it was his own folly.    He has had an opportunity to urge them, and the judgment and process under which his property will be sold, if he shall permit it to go to sale, will be "due process of law."    (Cooley on Taxation, 36, *et seq.*)    It is said, quite correctly, as we think, by Mr. Justice MILLER, in delivering the opinion of the court in *Davidson* v. *New Orleans,* 96 U. S. (6 Otto,) 97, "that whenever, by the laws of a State or by State authority, a tax, assessment, servitude or other burden is imposed upon property for the public use, whether it be for the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings can not be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections."    See, also, to like effect, *Hagan* v. *Reclamation District No. 108,* 111 U. S. 701.

*Fifth*—The last objection urged is, that the General Assembly passed two acts upon the same subject, on the same day, providing for different systems of drainage corporations, and that therefore both acts are special legislation, and for that reason condemned by the constitution.    We have not thought it necessary to analyze and compare the various sections of the two acts, to see whether this statement as to their substance and effect is true or not, since we deem it unimportant.    Concede they are local or special legislation, what clause of the constitution prohibits their enactment?    Article 9 of the constitution, entitled "Corporations," clearly relates

to private corporations, and not to local municipal corporations. This is so apparent upon the face of the constitution that we deem the mere statement, of itself, sufficient. The direct prohibition of special or local legislation is alone contained in section 22, article 4. "Drainage" is not one of the subjects enumerated in that section. It prohibits the incorporating of cities, towns and villages, or changing or amending their charters, (but not the formation of drainage districts with corporate authority,) except by general law. The general clause at the end of the section, that "where a general law can be made applicable, no special law shall be enacted," addresses itself to the General Assembly, alone. When that body has concluded a special law is necessary, except in the cases expressly prohibited, its conclusion is not the subject of judicial review. Under the constitution of 1848, there was a provision that "corporations not possessing banking powers or privileges may be formed under general laws, but shall not be created by special acts, except for municipal purposes, and in cases where, in the judgment of the General Assembly, the objects of the corporation can not be attained under general laws." It was held in *Johnson* v. *J. and C. Railroad Co.* 23 Ill. 202, that the judgment of the General Assembly was conclusive of the question, and in *The People* v. *Harper*, 91 Ill. 357, we applied the same ruling to the provision now under consideration.

The judgment is affirmed.

*Judgment affirmed.*