527:38 LRA 529

THE PEOPLE *ex rel.* Kern, State's Attorney,

*v.*

SAMUEL B. CHASE.

*Filed at Ottawa November 9, 1896—Rehearing denied March 12, 1897.*

1. JUDICIAL POWER—*what is "judicial power," within the meaning of the constitution.* Judicial power is that power which adjudicates upon and protects the rights and interests of individual citizens, and to that end construes and applies the laws.

2. SAME—*adjudication need not conclude the parties' rights.* An adjudication which involves the construction and application of the law and affects any of the rights and interests of the parties, though not finally determining them, is still a judicial proceeding and involves the exercise of judicial power.

3. CONSTITUTIONAL LAW—*act of 1895, concerning land titles, is unconstitutional.* The act entitled "An act concerning land titles," (Laws of 1895, p. 107,) is unconstitutional and void, as violating article 6, section 1, of the State constitution, by conferring judical power upon the county recorder of deeds (who is, by the act, made *ex officio* register of titles,) and upon his examiners.

BAKER, CARTWRIGHT and CARTER, JJ., dissenting.

APPEAL from the Criminal Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

PENCE & CARPENTER, for appellant:

To adjudicate upon and to protect the rights of individual citizens, and to that end to construe the law, is the province of the courts. Cooley's Const. Lim. 91.

A judgment is the end of the law. It finally terminates the disputes and adjusts the divers interests of mankind. Freeman on Judgments, sec. 1.

A judgment is the decision or sentence of law pronounced by the court or other competent tribunal in a proceeding therein. 18 Am. & Eng. Ency. of Law, 59.

He exercises judicial functions who hears before he condemns; who proceeds upon inquiry and renders judgment only after trial. This is the definition of Daniel Webster in the *Dartmouth College case.* The acts of the registrar fall within these definitions.

Under our constitution all judicial power is conferred upon the courts, (art. 6, sec. 1,) and all our judges are to be elected and commissioned by the Governor, (art. 6, secs. 23-32,) and no other person can exercise judicial functions. *Hoagland* v. *Creed*, 81 Ill. 506.

JACOB J. KERN, State's Attorney, also for appellant.

HARVEY B. HURD, for appellee:

There are many acts of a *quasi* judicial nature which may be done by others than the judiciary. Of this character are some of the acts of the election commissioners and judges of election under the city election law, as passing upon the right of an elector to vote; (*People* v. *Hoffman*, 116 Ill. 587;) the acts of municipal authorities in determining the character of public improvements, such as sewers; and in many instances their determinations are not subject to revision by the courts. *Johnson* v. *District of Columbia*, 118 U. S. 19; *Child* v. *Boston*, 4 Allen, 41; *Hills* v. *Brooklyn*, 32 N. Y. 498; *Springer* v. *Walters*, 37 Ill. App. 332; *Wright* v. *Chicago*, 48 Ill. 285; *Crawford* v. *People*, 82 id. 557; *Lake* v. *Decatur*, 91 id. 597.

In the following cases powers of a judicial nature are held not to be encroachments upon the functions of the judiciary: *Hawthorn* v. *People*, 109 Ill. 302; *Owners of Land* v. *People*, 113 id. 296; *People* v. *Nelson*, 133 id. 565; *Railroad Co.* v. *Jones*, 149 id. 361; *Reid* v. *Morton*, 119 id. 118.

The trial of right of property before a sheriff with a jury is not a judicial proceeding. *Rowe* v. *Bowen*, 28 Ill. 116.

OLIVER & MECARTNEY, also for appellee:

It is not sufficient, to bring matters under the judicial power, that they involve the exercise of judgment upon law and fact. *United States* v. *Ferreira*, 13 How. 40.

The courts must look to the circumstances of each case presented, to ascertain whether an act is ministerial or judicial. *Davidson* v. *New Orleans*, 96 U. S. 97.

THEODORE SHELDON, and GEORGE W. SMITH, also for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an information in the nature of a *quo warranto,* by the People, on the relation of the State's attorney of Cook county, against appellee, the recorder of deeds of that county, to oust him from the office of registrar of titles, the object being to test the constitutionality of an act of the legislature approved June 13, 1895, entitled "An act concerning land titles." (Laws of 1895, p. 107.) .The defendant set up, by way of plea, the statute. To that plea the relator filed a demurrer, which was overruled, and he elected to abide by it. Judgment was accordingly entered for the defendant, and the People prosecute this appeal.

It is contended that the statute contravenes several provisions of the constitution, and is therefore void. One of the contentions is, that it confers judicial powers upon the recorder of deeds (who is by the act made registrar of titles) and his examiners. If it does, counsel for appellee agree that it violates article 6, section 1, of the constitution, which provides that the judicial powers shall be vested in courts therein named, and the law is therefore invalid, without reference to other objections urged against it. In our view of the case it will only be necessary to decide this one question.

The act is very voluminous, consisting of ninety-four sections, but those bearing more or less directly upon the subject to be considered are the following:

"Sec. 7. The owner of any estate or interest in land, whether legal or equitable, and whoever has the power of appointing or disposing of the entire legal estate in fee simple, may apply to the registrar of the county in which the land is situated to have his title registered. He may apply in person, or by an attorney in fact authorized so to do. A corporation may apply by its authorized agent;

165—34

an infant by his natural or legal guardian; any other person under disability by his legal guardian."

"Sec. 11. The application shall be in writing, signed and sworn to by the applicant or the person acting in his behalf. It shall set forth, substantially: (a) The name and place of residence of the applicant, and if the application is by one acting in behalf of another, the name and place of residence and capacity of the person so acting. (b) Whether the applicant (except in the case of a corporation) is married or not, and if married the name and residence of the husband or wife. (c) The description of the land. (d) The applicant's estate or interest in the same, and whether the same is subject to an estate of homestead. (e) Whether the land is occupied or unoccupied, and if occupied, the name and post-office address of each occupant, and what estate or interest he has or claims in the land. (f) Whether the land is subject to any lien or incumbrance, and if any, give the name and post-office address of each holder thereof, and the nature and amount of the same, and if recorded, the book and page of the record. (g) Whether any other person has any estate or claims any interest in the land, in law or equity, in possession, remainder, reversion or expectancy, and if any, set forth the name and post-office address of every such person and the nature of his estate or claim. (h) If the applicant is a male, that he is of the full age of twenty-one years; if a female, that she is of the full age of eighteen years; if the application is on behalf of a minor, the age of such minor shall be stated."

"Sec. 14. Upon such application being filed with the registrar, he shall cause examination to be made into the applicant's title to the land and as to the truth of the matter set forth in the application, and particularly whether the land is occupied, the nature of the occupation if occupied, and by what right, and shall notify all persons who shall appear, by the application or otherwise, to have any interest in or lien or claim upon the land, of

such application, a copy of which notice shall be posted upon the premises, in a conspicuous place, at least ten (10) days before the granting of the certificate of title. No applicant for the registration of any interest in land under this act shall be required to furnish with his application an abstract of title or other evidence, except of instruments which are not then of record in the office of the recorder of the county in which the land is situated; but it shall be the duty of the examiners to examine, as the basis of their opinion, the full records of all instruments which are then of public record in said office, together with the original instruments, or abstracts thereof, of which the records have been destroyed by fire or otherwise. If any defects are found in the title which he thinks may be removed, he shall notify the applicant of the same, and give him a reasonable time to remove such defects before finally passing upon his application.

"Sec. 15. If it shall be made to appear to the registrar that the facts stated in the application are true, and that the applicant is the owner of the land or interested therein, as set forth in the application, he shall issue a certificate of title and proceed to bring the land under the operation of this act, as hereinafter provided. Otherwise he shall dismiss the application without prejudice, and return the papers to the applicant."

"Sec. 29. The registered owner of any estate or interest in land brought under this act shall, except in case of fraud to which he is a party, or of the person through whom he claims without valuable consideration paid in good faith, hold the same subject only to such estates, mortgages, liens, charges and interests as may be noted in the last certificate of title in the registrar's office, and free from all others, except: First, any subsisting lease, or agrèement for a lease, for a period not exceeding five years, where there is actual occupation of the land under lease. The term 'lease' shall include a verbal letting. Second, all public highways embraced in the description

of the lands included in the certificate shall be deemed to be excluded from the certificate. Third, any subsisting right of way or other easement, however created, upon, over or in respect of the land. Fourth, any tax or special assessment for which a sale of the land has not been had at the date of the certificate of title. Fifth, such right of action or counter-claim as is allowed by this act. Sixth, the right of any person in possession of and rightfully entitled to the land, or any part thereof, or any interest therein adverse to the title of the registered owner at the time when the land is first brought under this act, and continuing in said possession until the issuance of such last certificate of title.

"Sec. 30. After land has been registered, no title thereto adverse or in derogation to the title of the registered owner shall be acquired by any length of possession, merely.

"Sec. 31. Except in case of fraud, and except as otherwise herein provided, no person taking from the registered owner a transfer of registered land, or any estate or interest therein, or of any charge upon the same, shall be held to inquire into the circumstances under which or the consideration for which the estate or interest of such owner, or any previous registered owner, was registered, or be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand or interest in the land; and the knowledge that any unregistered trust, lien, claim, demand or interest is in existence shall not, of itself, be imputed as fraud.

"Sec. 32. In any suit for specific performance brought by a registered owner of any land under the provisions of this act, against a person who may have contracted to purchase such land, not having notice of any fraud or other circumstances which, according to the provisions of this act, would affect the right of the vendor, the certificate of title of such registered owner shall be held in every court to be conclusive evidence that such registered

owner has a good and valid title to the land and for the estate or interest therein mentioned or described.

"Sec. 33. In any action or proceeding brought for eject-ment, partition or possession of land, the certificate of title of a registered owner shall be held in every court to be conclusive evidence, except as herein otherwise pro-vided, that such registered owner has a good and valid title to the land and for the estate or interest therein mentioned or described, and that such registered owner is entitled to the possession of said land, except as against any person rightfully claiming possession under some estate, mortgage, lien or charge noted on the cer-tificate.

"Sec. 34. The register of any land, and duly credited copies thereof, shall, except as herein otherwise provided, be received in law and in equity as evidence of the facts therein stated, and as conclusive evidence that the per-son named therein as owner is entitled to the land for the estate or interests therein specified.    The words 'heirs and assigns' shall not be necessary to create a fee simple estate of inheritance.

"Sec. 35. Whenever a memorial has been entered as permitted by this act, the registrar shall carry the same forward upon all certificates of title until the same is canceled in some manner authorized by this act.

"Sec. 36. All dealings with land, or any estate or in-terest therein, after the same has been brought under this act, and all liens, incumbrances and charges upon the same subsequent to the first registration thereof, shall be deemed to be subject to the terms of this act and to such amendments and alterations as may hereafter be made. The bringing of land under this act shall imply an agree-ment, which shall run with the land, that the same shall be subject to the terms of the act and all amendments and alterations thereof.

"Sec. 37. With the exceptions mentioned in section 29, no person shall commence any action at law or in equity

for the recovery of land, or assert any interest, right in or lien or demand upon the same, or make entry thereon, adversely to the title or interest certified in the first certificate bringing the land under the operation of this act, unless within five years after the first registration. It shall not be an exception to this rule that the person entitled to bring the action or make the entry is an infant, lunatic or is under any disability, but action may be brought by such person by his next friend or guardian. It shall be the duty of the guardian, if there is any, to bring action in the name of his ward, whenever it is necessary to preserve or enforce the ward's rights in registered land.

"Sec. 38. Any person having any interest, right, title, lien or demand, whether vested, contingent or inchoate, in, to or upon registered land, which existed at the time the land is first registered, and upon or for which no cause of action shall have accrued at the date of the registration of the land, may, prior to the expiration of said five years after such registration, file in the registrar's office a notice, under oath, setting forth his interest, right, title, lien or demand, and how and under whom derived, and the character and nature thereof; and if such notice or counter-claim is so filed, an action may be brought to assert or recover or enforce the same at any time within one year after the right of action shall have accrued thereon, or at any time within the period of five years after said first registration, and not afterwards. It shall be the duty of a life tenant or trustee to file such counter-claim on behalf of any remainder-man or reversioner, whether the remainder or reversion be at the time vested or contingent, and of a guardian to file such counter-claim on behalf of his ward."

Under these several provisions of the act, if A B claimed to be the owner of a lot in the city of Chicago, as devisee, in fee simple, and as such wished to have his title registered as authorized by section 7, his applica-

tion, in conformity with section 11, would be substantially as follows:

"A B, a resident of ,Chicago, Cook county, Illinois, unmarried, is the owner of lot......(describing it) in fee simple, not subject to an estate of homestead, unincumbered, subject to no liens or incumbrances; that C D claims to own said lot in fee simple, and his post-office address is No......, ..........street, Chicago, Illinois; that this applicant is of the full age of twenty-one years.
(Sworn to)      A B."

Suppose the applicant claimed such ownership as devisee under the will of John Doe, deceased. If the will was not recorded in the office of the recorder of deeds (the registrar) it would be the duty of the applicant to furnish a copy thereof, with his application, and any other instruments in his chain of title not then of record in that office. (Part of sec. 14.) Under other provisions of that section it would then become the duty of the registrar to cause an examination to be made as to the truth of the facts set forth in the application, and also whether the lot was occupied, and if so, the nature of the occupancy. He would next be required to notify C D, and all other persons whom he might find to be interested, by reason of possession or otherwise, and post a copy of the notice on the premises, at least ten days before granting the certificate of registration. If C D, being under no disability, appeared before the registrar in obedience to that notice, and set up claim to the lot as the only heir of John Doe, deceased, claiming that the will accompanying the application was not legally executed as provided by the statute, and that it did not, by a proper construction, devise the lot to A B, or if he was an infant, lunatic or under other disability, and no appearance was made for him by guardian, conservator or next friend, it would be the duty of the registrar, aided by his two examiners, to inquire into the matter, and settle, in the one case, the issue made between the parties, and in the other, *ex parte*, the claim of ownership set up in the application. If, upon such

investigation, he should find the facts stated in the application to be true, "*and that the applicant is the owner of the land in fee simple, as set forth in the application,*" he must issue a certificate of title and proceed to bring the lot under the operation of the act, as thereinafter provided. But if, upon such examination, he should find that the facts stated in the application are not true, or that A B is not the owner of the lot, it would be his duty to dismiss the application without prejudice, returning the papers to the applicant. If he granted the certificate it would be substantially in the following form:

"STATE OF ILLINOIS, ⎱ *ss.*
   *Cook County.* ⎰

"A B, of Chicago, Cook county, Illinois, unmarried, is the owner of an estate in fee simple in the following land, to-wit: lot ......, in the city of Chicago. Witness my hand and official seal, this ...... day of .........., 1896.

       [Seal.]          SAMUEL B. CHASE, *Registrar.*"

In obedience to the provisions of section 17 of the act, this certificate could only be issued upon the written opinion of two examiners, appointed under section 5, filed with the registrar, "to the effect that the applicant has a good title to the estate or interest in the land, as stated in the application." Upon the issuing of the certificate, A B, in the absence of fraud to which he is a party, etc., would hold the lot in fee, free from all others, except, first, any subsisting lease, etc.; second, all public highways; third, any subsisting right of way; fourth, any tax or special assessment; fifth, "such right of action or counter-claim as is allowed by the act;" and sixth, the right of any person in possession of and rightfully entitled to the land, or any part thereof or interest therein, adverse to him at the time when the certificate was issued, as provided by section 29. With the exceptions mentioned in this section, neither C D nor any other person claiming the lot could commence any action at law or in equity for the recovery thereof, or assert any interest, right in or lien or demand upon the same, or make

any entry thereon adversely to the title of C D, unless the action should be brought within five years from that date (sec. 37); or, if the right existed at the time of the issuing of the certificate but no cause of action had then accrued, such party might, prior to the expiration of said five years, file in the registrar's office a notice, under oath, setting forth his interest, etc., and might then bring his action at any time within one year after the right accrued.   (Sec. 38.) `

It is insisted by counsel for appellant, that in such a proceeding before the registrar he would exercise judicial functions, and that the certificate so issued would be, in effect, an adjudication that A B was the owner of the lot in fee simple.   It is contended, on the other hand, on behalf of appellee, by the several counsel representing him, that the acts of the registrar and his examiners are only ministerial, and, though performed by the exercise of judgment and discretion somewhat judicial in character, are in no way violative of the foregoing provision of the constitution.   Their contention is, that the statute giving effect to the certificate of registration is nothing more or less than a statute of limitations, and it is said: "Under the act in question the registrar's certificates do not bind any one for the first five years.   During that time they may be attacked directly or in a collateral proceeding.   The sole object of the first certificate of title is to start the running of the Statute of Limitations.   It is only by virtue of the limitation thus expressed that the certificate ever attains its conclusive effect.   The registration of the land and the issuing of the certificate of title start the running of the Statute of Limitations, and nothing will arrest its operation except the interposition of some adverse claim, which must be made to appear upon the register.   Therefore, when the five years have expired and nothing appears upon the register to the contrary, the conclusion is inevitable that nothing can ever be brought forward to disturb the registered

title. The advantage of this limitation over our other statutory or common law limitations is, that it is based entirely upon matter of record, namely, the registration of the first certificate of title. As it is started by only matter of record, so, if arrested at all, it will be arrested by a matter that will appear upon the same record. Therefore, whether all adverse claims are barred or not can be told by looking at the register."

Conceding all this to be true, it does not, in our opinion, follow that the proceeding before the registrar is not judicial in its character, within the meaning of the constitution, nor that the registrar and examiners, upon whose opinion the validity of A B's title is determined, are not clothed with judicial powers. Whether the principal thing to be determined by them be the ownership of the land, or merely whether it shall be brought under the provisions of the act, or only when the Statute of Limitations shall begin to run, it seems clear that the adjudication is upon the rights of the parties claiming as owners, by construing and applying the law to the facts of the case. The definition of judicial power given by Judge Cooley in his work on Constitutional Limitations, held by this court to be sufficiently accurate for the purposes of the question then before the court, which was in substance the same as that now under consideration, is as follows: "The power which adjudicates upon and protects the rights and interests of individual citizens, and to that end construes and applies the laws." (*Owners of Lands* v. *People ex rel.* 113 Ill. 296.) We do not understand that under this definition, or under any definition of the term "judicial powers," it is necessary that the adjudication between the parties shall be conclusive of their rights put in issue; but if the party or officer is clothed with the power of adjudicating upon and protecting the rights or interests of contesting parties, and that adjudication involves the construction and application of the law and affects any of the rights or interests of the parties, though

not finally determining the rights, it is still a judicial
proceeding or the exercise of judicial functions. The
question, therefore, in the supposed case is, not whether
the registrar finally determines the ownership of the lot,
but whether his decision affects the rights of the parties
claiming that ownership.

As we understand the argument of counsel for appel-
lee, their position is, that the proceeding before the reg-
istrar is not to determine the ownership of the lot, but
simply to ascertain whether, under the existing facts, the
lot shall be brought under the act, and that the determi-
nation of the ownership is merely incidental to the min-
isterial act of bringing the property into registration,
and that the courts are left open to all parties claiming
any interest adversely to the holder of the certificate of
title. It is nevertheless true, that the rights in the case
stated of C D are substantially and conclusively affected
by the decision that A B is the owner and entitled to
have the lot brought under the act in question. It will
not be denied that the issuing of the certificate puts in
operation the Statute of Limitations against C D, and
that it in effect amounts to a determination that if his
rights are not asserted in the courts within five years
thereafter (unless within the provisions of section 38) he
shall be forever barred. In other words, if it be true
that the issue before the registrar is whether the prop-
erty shall be registered and whether the Statute of Lim-
itations shall from that time begin to run, the decision
of that question involves the determination of the own-
ership of the property; and if it be conceded that the
courts are left open to C D for a period of five years from
that date, the decision nevertheless takes away from him
the existing right to bring his action without that restric-
tion. The decision against him that the property shall
be brought under the provisions of the act is as fatal
to his right of ownership as though that question were
finally and conclusively settled, except that he still has

a limited time in which to have his title settled in a court of law or equity.

In case of disability at the time the registrar issues his certificate, the right reserved to bring the action within five years may be of no benefit whatever. Section 37 expressly provides, that "it shall not be an exception to this rule" (that is, that the requirement that the action must be brought within five years,) "that the person entitled to bring the action or make the entry is an infant, lunatic or is under any disability, but action may be brought by such person by his next friend or guardian." Let it be supposed, in the case put, that C D, at the time of registration, is a child one year of age, without guardian, and, of course, incapable himself of procuring the appointment of one. The registrar decides, and issues a certificate which starts the running of the Statute of Limitations against him. As to that fact his decision is conclusive. When the statute has run C D is six years of age, still without guardian and still incapable of procuring the appointment of one,—incapable of knowing or protecting any of his rights,—and yet, by the determination of the registrar that A B was the owner of the lot and entitled to a certificate of registration, his rights are absolutely and forever barred. How did the registrar arrive at the conclusion that A B was the owner of the property? Clearly, by the examination of the facts and by construing and applying the law to those facts, in doing which he adjudicated upon the rights and interests of A B and C D, and decided in favor of A B and against C D in a matter of most vital importance.

It seems to us that the reading of this act forces the mind to the conclusion that it confers upon the registrar and his examiners judicial powers for the purpose of determinining the rights of adverse parties. If, as is contended, the duties of the registrar are purely ministerial, why should he have been required to call to his assistance "two or more competent attorneys" to be ex-

aminers of title, as his legal advisers? Why, if his duties are merely ministerial, should he be limited in his right to bring the property within the provisions of the act, to cases in which he should have the favorable opinion of at least two of these examiners?   Manifestly, the act contemplates that he shall consider and apply the law to the facts presented by the applicant, and, lest he should not be able to do so himself, he is required to call to his aid those learned in the law.  In the case supposed, whether the will was legally executed would to a lawyer be a simple question, but in its determination it would be necessary to understand and apply the provisions of the statute; and whether, by a proper construction of the instrument, a devise was legally made to a particular person, every lawyer knows would often become a matter most difficult of solution.

We are not unmindful of the well settled rule that there are many cases in which ministerial officers exercise *quasi* judicial powers or discretions and yet the laws conferring such powers are held to be no ·violation of the constitutional provision under consideration.  These cases are referred to and commented upon in *Owners of Lands* v. *People ex rel. supra.*  But what we have already said sufficiently distinguishes the powers conferred upon the registrar by this act from all such cases.

It seems to us that it would be difficult to more clearly and positively confer judicial powers upon a person unqualified, under the constitution, to exercise those powers, than is done by this law.   This, doubtless, resulted from an attempt to adopt the provisions of a similar law in force in Australia, Canada, England, and perhaps other countries, by which the certificate of title issued becomes conclusive as to the ownership of the property, and in which countries no constitutional or other restriction exists against the legislative grant of such powers upon non-judicial officers.   The powers of the registrar are no less judicial under our statute than those in the countries

referred to. The only difference is, there this is no valid objection to the validity of the law, while here it is fatal. In *In re, etc. ex parte Bond,* 6 V. L. R. (L.) 458, in construing the Transfer of Land Statute, it is said: "The intention of the legislature was obviously to impose the duty upon the registrar to prevent instruments being registered which, in law as well as in fact, ought not to be registered in the first instance, and to determine the validity of the instruments, as well as the priority of registration in point of time. He has therefore to discharge not merely ministerial, but judicial, duties."

Without further discussion of the question we are of the opinion that this law, for the reasons stated, is obnoxious to the constitution, and therefore void.

The judgment of the court will be reversed and the cause remanded to the Criminal Court of Cook county, with directions to enter a judgment of ouster against the defendant, as prayed in the information.

*Reversed and remanded.*

BAKER and CARTWRIGHT, JJ., do not concur in this opinion.

Mr. JUSTICE CARTER: I do not concur.