SARAH C. MILLER *et al. v.* RUFUS JEWELL MILLER.*

(*Knoxville.* September Term, 1923.)

1. **CONSTITUTIONAL LAW.** Statute held not invalid as imposing duty on courts to pass on moot cases.

The Declaratory Judgment Act (Pub. Acts 1923, chapter 29), does not violate Const. article 6, section 1, relating to judicial power as conferring power or imposing duty on courts to pass on purely moot cases or abstract questions of law. (*Post, pp.* 484-486.)

Acts cited and construed: Acts 1923, ch. 29; Acts 1919, ch. 150.

Cases cited and approved: Harbison v. Knoxville Iron Co., 103 Tenn., 431; Anway v. Grand Rapids R. Co., 211 Mich., 592; State ex rel. Hopkins v. Grove, 109 Kan., 619; Muskrat v. United States, 219 U. S., 346; Landowners v. People, 113 Ill., 296; People v. Chase, 165 Ill., 527; People v. Simon, 176 Ill., 165; Arms v. Ayer, 192 Ill., 601; State v. Le Clair, 86 Me., 522; Armstrong v. Murphy, 65 App. Div., 126; Grider v. Tally, 77 Ala., 422; In re Ungaro, 88 N. J. Eq., 25; Guaranty Trust Co. v. Hannay, 2 K. B., 562; Dyson v. Attorney-General, 1 Ch., 158; Burghes v. Attorney-General, 1 Ch., 173; Russian Commercial & I. Bank v. British Bank, 19 A. L. R., 1101; Barwick v. Southeastern & C. R. Co., 1 K. B., 187.

Cases cited and distinguished: Richardson v. McCresney, 218 U. S., 487; United States v. Evans, 213 U. S., 297; California v. San Pablo & T. R. Co., 149 U. S., 308; Risser v. Hoyt, 53 Mich., 185; Simmonds v. Newport Abercarn Black Vein Steam Coal Co., 124 L. T. N. S., 557; Guaranty Trust Co. v. Hannay, 12 A. L. R. 1.

Constitution cited and construed: Art. 6, sec. 1.

----

On power of court to decline jurisdiction of Moot question, see note in 6 B. R. C., 340.

On declaration of rights or declaratory judgments, see notes in 12 A. L. R., 57; 19 A. L. R., 1124.

Miller v. Miller.

2. **ACTION.** Controversy necessary to invoke declaratory judgment statute, stated.

The only controversy necessary to invoke action of court under Declaratory Judgment Statute, Pub. Acts 1923, chapter 29, is that the question must be real and not theoretical; the person raising it must have a real interest, and there must be some one having real interest who may oppose the declaration sought, and it is not necessary that any breach of obligation should be first committed, any right invaded, or wrong done. (*Post, p.* 487.)

3. **ACTION.** Court may refuse to enter declaratory judgment if it would not terminate uncertainty.

Court may refuse under Pub. Acts 1923, chapter 29, to enter declaratory judgment where, if rendered, it would not terminate uncertainty or controversy giving rise to proceeding. (*Post, p.* 487.)

4. **ACTION.** Executrix and children of testator held to have such interest in will as to entitle them to declaratory judgment.

Widow of testator, also his executrix and his adult children, *held* to have such interest in will of testator as entitled them to declaratory judgment under Pub. Acts 1923, chapter 29, to settle the right of the executrix to sell real estate devised if she deem it necessary for support, use and benefit of herself and children, and make good and sufficient title, minor child of testator made defendant, being proper contradicter. (*Post, p.* 487.)

5. **WILLS.** Widow and executrix held to have unrestricted right to sell any portion of real estate necessary for benefit of herself and children.

A will devising to widow and executrix real estate to be managed, used, and controlled by her for use and benefit of herself and children, with power to sell, if necessary in her judgment, a portion, *held* to vest in widow unrestricted power to sell any portion of real estate if in her judgment she deems it necessary for support, use, or benefit of herself and children, and her judgment with regard thereto is not subject to review or control by court. (*Post, pp.* 487-489.)

Cases cited and approved: Matthews v. Capshaw, 109 Tenn., 480; Fitzgerald v. Standish, 102 Tenn., 389.

Miller v. Miller.

Case cited and distinguished: Bedford v. Bedford, 110 Tenn., 211.

### FROM KNOX.

Headnote 1. Judgments, 33 C. J., section 57. 1. Constitutional Law, 12 C. J., section 376. 2. Judgments, 33 C. J., section 57. 3. Judgments, 33 C. J., section 57. 4. Judgments, 33 C. J., section 57 5. Wills, 40 Cyc, pp. 1831, 1832.

Appeal from the Chancery Court of Knox County.— HON. CHAS. HAYS BROWN, Chancellor.

GREEN, WEBB & COWAN, for Sarah C. Miller and others.

FOWLER & FOWLER, for Rufus J. Miller.

MR. JUSTICE HALL delivered the opinion of the Court.

This cause involves the constitutionality of chapter 29 of the Public Acts of 1923, which is an act concerning and regulating declaratory judgments.

If the act be held constitutional, then another question arises, and that is, the proper construction of the will of R. T. Miller, deceased.

Mr. Miller, the testator, died at his residence in Knox county on September 14, 1921, leaving a last will and testament, which, among other clauses, is clause 3, which reads as follows:

"Third: I will and devise to my loving wife, Sarah C. Miller, all of my real estate of every kind and description that I die seized and possessed of for and during her natural life, or widowhood, the same to be managed, used and controlled by herself, for the use and benefit of herself and my children; my said wife, Sarah C. Miller has the power if she deems necessary for the support and use

149 Tenn.—30.

or benefit of herself and children to sell any part or portion of said estate and make a good warranty title for the same, in the event if it becomes necessary in her judgment to sell a portion of said real estate for the use of any one of my said heirs, the same shall be deducted from his or her portion of my estate when the same is divided.

"At the death of my said wife, Sarah C. Miller, or at the expiration of her widowhood the estate is then to be divided equally between my bodily heirs, share and share alike; but if the estate or a portion of the same cannot be divided in kind the same is to be sold and the proceeds equally divided between my heirs."

This is the clause which it is sought to have the court construe. The complainant, Mrs. Sarah C. Miller, is the widow of the deceased testator, and is the executrix of his will. The other complainants are the adult children of the testator. The bill was filed against the defendant, Rufus Jewell Miller, the only minor child of the testator, seeking a construction of the foregoing clause of his will.

It is the contention of complainants that the complainant, Mrs. Sarah C. Miller, has the right, under the foregoing clause of said will, whenever, in her discretion, she thinks it necessary for the support and use or benefit of herself and children, to sell any or all of the real estate of which the testator died seized and possessed, and that this discretion is absolute and not subject to review or control by the courts; and that a deed executed by her to said real estate would pass a good and valid title.

The bill alleges that complainant, Mrs. Sarah C. Miller, has several times contracted to sell portions of the real estate of which the testator died seized and possessed, but when the proposed purchaser came to examine the title the question of her right to make a good title was ques-

tioned, and on two occasions sales have not been consummated on this account.

The bill alleges, and the answer of the guardian *ad litem* admits, that the testator owned a number of pieces or parcels of real estate situated in the city of Knoxville and Knox county at the time of his death which passed under his will.

There is no present actual controversy in the sense of threatened litigation as to the widow's right to sell said real estate under the clause of the will above quoted. The jurisdiction of the court is predicated entirely upon our Declaratory Judgment Act.

The defendant answered the bill by his guardian *ad litem,* and admitted all of its allegations, but does not admit that complainant's construction of the will is correct, and defends upon the ground that the Declaratory Judgment Act is unconstitutional for the following reasons:

(1) Because the bill seeks to have the court adjudicate future rights, and that there are no existing facts upon which the court can base a decree, and that its opinion would be a mere abstraction.

(2) Because the Declaratory Judgment Act violates section 1, article 6, of our constitution, which provides, in substance, that the judicial power of the state shall be vested in one supreme court, and in such circuit, chancery, and other inferior courts as the legislature shall from time to time ordain and establish.

(3) Because said act is repugnant to section 8, article 1, of our constitution, which provides that no man shall be deprived of his life, liberty, or property but by the judgment of his peers or the law of the land.

It is conceded by counsel for defendant that if the act is not violative of article 6, section 1, of our constitution, then it is not repugnant to article 1, section 8. *Harbison* v. *Knoxville Iron Co.*, 103 Tenn., 431, 53 S. W., 955, 56 L. R. A., 316, 76 Am. St. Rep., 682.

The cause, having been set down for hearing on bill and answer, was heard by the chancellor, who declared the act unconstitutional and dismissed complainant's bill. From this decree complainants have appealed and assigned the action of the chancellor for error.

The act involved reads as follows:

"An act concerning and regulating declaratory judgments and decrees and to make uniform the law relating thereto.

"Section 1.   Be it enacted by the General Assembly of the state of Tennessee, that courts of record within their respective jurisdictions shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.   No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for.   The declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree.

"Sec. 2.   Be it further enacted, that any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and

Miller v. Miller.

obtain a declaration of rights, status or other legal relations thereunder.

"Sec. 3. Be it further enacted, that a contract may be construed either before or after there has been a breach thereof.

"Sec. 4. Be it further enacted, that any person interested as or through an executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin, or *cestui que* trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto:

"(a) To ascertain any class of creditors, devisees, legatees, heirs, next of kin or others; or

"(b) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or

"(c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.

"Sec. 5. Be it further enacted, that the enumeration in section 2, 3 and 4 does not limit or restrict the exercise of the general powers conferred in section 1, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty.

"Sec. 6. Be it further enacted, that the court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

"Sec. 7. Be it further enacted, that all orders, judgments and decrees under this act may be reviewed as other orders, judgments and decrees.

"Sec. 8. Be it further enacted, that further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

"Sec. 9. Be it further enacted, that when a proceeding under this act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.

"Sec. 10. Be it further enacted, that in any proceeding under this act the court may make such award of cost as may seem equitable and just.

"Sec. 11. Be it further enacted, that when declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general of the State shall also be served with a copy of the proceeding and be entitled to be heard.

"Sec. 12.   Be it further enacted, that this act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.

"Sec. 13.   Be it further enacted, that the word 'person,' wherever used in this act, shall be construed to mean any person, partnership, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever.

"Sec. 14.   Be it further enacted, that the several sections and provisions of this act except sections 1 and 2, are hereby declared independent and severable, and the invalidity, if any, of any part or feature thereof shall not affect or render the remainder of the act invalid or inoperative.

"Sec. 15.   Be it further enacted, that this act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees.

"Sec. 16.   Be it further enacted, that this act may be cited as the Uniform Declaratory Judgments Act.

"Sec. 17.   Be it further enacted, that this act shall take effect from and after its passage, the public welfare requiring it."

An act substantially the same as ours authorizing declaratory judgments has recently been held unconstitutional by the supreme court of Michigan in *Anway* v. *Grand Rapids R. Co.*, 211 Mich., 592, 179 N. W., 350, 12 A. L. R., 26.   In that case Mr. Justice SHARPE dissented

from the opinion of the majority. The proceeding was instituted in the circuit court for the county of Kent in chancery under Act 150 of the Public Acts of 1919, entitled "An act to authorize courts of record to make binding declaration of rights."

The bill alleged, in substance, that plaintiff was employed by defendant street railway company as a conductor; that he desired to work more than six days in consecutive seven days; he did not claim to have any such contract with defendant; he claimed no breach of any contract; he did not allege that defendant had committed, or threatened to commit, any wrong upon him, or that he had any claim, present or prospective, for any damages from defendant; he sought to have the court advise him whether defendant would violate the provisions of Act 361, Public Acts 1919, if it should in the future permit him to work more than six days in consecutive seven days.

The defendant railway company answered, admitting the allegations of the bill. Division 836, Amalgamated Association of Street and Electric Railway Employees of America, intervened. The sole question presented in the case was as to the meaning of the act above mentioned.

The constitution of the State of Michigan (article 7, section 1) contains a similar provision to ours with respect to judicial power.

An act authorizing declaratory judgments enacted by the legislature of the State of Kansas was recently held constitutional in *State ex rel. Hopkins* v. *Grove,* reported in 109 Kan., 619, 201 Pac., 82, 19 A. L. R., 1116. The act involved in that case, however, provided for declaratory judgments in actual controversies, while the Michigan act and our act contain no such express provision.

Miller v. Miller.

It will be noted that by section 2 of our act it is provided:

"That any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Section 3 provides:

"That a contract may be construed either before or after there has been a breach thereof."

The majority opinion in *Anway* v. *Grand Rapids R. Co.*, supra, held, in effect, that the Michigan act was not subject to the construction that it provided for declaratory judgments in actual controversies only, but that the proceedings authorized by the act made it necessary for the court to hear and determine moot questions, and declare rights which have not been controverted and may never be; in other words, moot propositions. In that case Mr. Justice FELLOWS, speaking for the majority, said:

"While the advocates of this measure insist that the proceedings authorized by the act do not constitute a moot case, and while the proceedings may not square in all particulars with the technical definition of a moot case, they are such in every essential. The act contemplates determinations of abstract propositions of law before any cause of action has accrued or before any wrong has been committed, or before any damages have been occasioned or threatened; it does not contemplate final process to put the determination of the court into force unless there be

a further proceeding on application by petition. Section 3. It contemplates construction of deeds and other written instruments when no one is questioning their construction, and the determination of rights under contracts which have not been breached and never will be. In short, it requires that the time of the court shall be taken, not in the determination of actual controversies where rights have been invaded and wrongs have been done, but in the giving of advice to all who may seek it. If the proceedings do not square with the technical definition of a 'moot case,' they possess all of its objectionable characteristics, and in every essential it attempts to legalize what before was considered by many courts and text-writers a contempt of court—the presentation of a moot case. Mr. Bouvier says (2 Bouvier's Law Dict. p. 2245) : 'Any attempt by a mere colorable dispute, to obtain the opinion of a court upon a question of law, when there is no real controversy, is an abuse which courts have always reprehended and treated as a punishable contempt of court.' "

Then the court, without going into details as to how the question arose, quoted from some of the cases which have dealt with the power of the court to consider cases in which no wrongs were sought to be redressed, and where no rights had been violated, and where no actual controversy existed, to sustain the opinion of the majority. Among the cases quoted from is *Richardson* v. *McChesney*, 218 U. S., 487, 31 Sup. Ct., 43, 54 L. Ed., 1121, in which the court said:

"The duty of this court is limited to actual pending controversies. It should not pronounce judgment on abstract questions, even if its opinion might influence future action under like circumstances."

In *United States* v. *Evans,* 213 U. S., 297, 29 Sup. Ct., 507, 53 L. Ed., 803, the court said:

"When the judgment appealed from cannot be affected by the decision of the appellate court the case becomes a moot one and the appeal should be dismissed; hearing and deciding such an appeal for the purpose of establishing a rule of observance in cases subsequently arising is not an exercise of judicial power."

In *California* v. *San Pablo & T. R. Co.,* 149 U. S., 308, 13 Sup. Ct., 876, 37 L. Ed., 747, the court said:

"The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard."

Another case quoted from at length by the learned justice who wrote the majority opinion in the Anway Case is *Muskrat* v. *United States,* 219 U. S., 346, 31 Sup. Ct., 250, 55 L. Ed., 246. In that case the court had under consideration the Federal Act passed March 1, 1907, chapter 2285, 34 U. S. Stat., 1015, 1028, authorizing Muskrat and others, on behalf of themselves and other Cherokee citi-

zens, to institute proceedings in the court of claims, with a right of appeal to the supreme court, ". . . to determine the validity of any acts of Congress passed since the said Act of July first, nineteen hundred and two, in so far as said acts, or any of them, attempt to increase or extend the restrictions upon alienation, incumbrance, or the right to lease the allotments of lands of Cherokee citizens, or to increase the number of persons entitled to share in the final distribution of lands and funds of the Cherokees beyond those enrolled for allotment as of September first, nineteen hundred and two, and provided for in the said Act of July first, nineteen hundred and two."

The proceedings authorized by this act were instituted and brought to the supreme court on appeal. That court, in an opinion by Mr. Justice DAY, reached the conclusion that the Act of March 1, 1907, was in excess of legislative authority, and that the Congress had no power to confer power other than judicial power upon the court, or to require of it other than judicial action; that the proceedings there under consideration did not require the exercise of judicial power, and ordered a dismissal of the proceedings. After reviewing the authorities, the court said:

"It is therefore evident that there is neither more nor less in this procedure than an attempt to provide for a judicial determination, final in this court, of the constitutional validity of an act of Congress. Is such a determination within the judicial power conferred by the constitution, as the same has been interpreted and defined in the authoritative decisions to which we have referred? We think it is not. That judicial power, as we have seen, is the right to determine actual controversies arising be-

Miller v. Miller.

tween adverse litigants, duly instituted in courts of proper jurisdiction. The right to declare a law unconstitutional arises because an act of Congress, relied upon by one or the other of such parties in determining their rights, is in conflict with the fundamental law. The exercise of this, the most important and delicate duty of this court, is not given to it as a body with revisory power over the action of Congress, but because the rights of the litigants in justiciable controversies require the court to choose between the fundamental law and a law purporting to be enacted within constitutional authority, but in fact beyond the power delegated to the legislative branch of the government. This attempt to obtain a judicial declaration of the validity of the act of Congress is not presented in a 'case' or 'controversy,' to which, under the constitution of the United States, the judicial power alone extends. It is true the United States is made a defendant to this action, but it has no interest adverse to the claimants. The object is not to assert a property right as against the government, or to demand compensation for alleged wrongs because of action upon its part. The whole purpose of the law is to determine the constitutional validity of this class of legislation, in a suit not arising between parties concerning a property right necessarily involved in the decision in question, but in a proceeding against the government in its sovereign capacity, and concerning which the only judgment required is to settle the doubtful character of the legislation in question. Such judgment will not conclude private parties, when actual litigation brings to the court the question of the constitutionality of such legislation. In a legal sense the judgment could not be executed, and amounts in fact to no

more than an expression of opinion upon the validity of the acts in question. Confining the jurisdiction of this court within the limitations conferred by the constitution, which the court has hitherto been careful to observe, and whose boundaries it has refused to transcend, we think the Congress, in the Act of March 1, 1907, exceeded the limitations of legislative authority, so far as it required of this court action not judicial in its nature within the meaning of the constitution."

It is said in the majority opinion in the Anway Case that the foregoing case "should forever put at rest this question. It is absolutely decisive of the question before us."

Mr. Justice SHARPE, in his dissenting opinion in the Anway Case, said:

"No claim is made that in the performance of the duties imposed in this act the courts will thereby usurp any of the functions of either the executive or legislative departments. The claim of unconstitutionality must rest alone on the act imposing duties upon the courts which are not judicial in their character. The judicial power of the state is vested by the constitution in the courts. The legislature can in no way limit such power when it is called into action nor extend it beyond that inherent in judicial tribunals. In 12 C. J., 817, after stating the rule as above, it is said: 'But an extension of jurisdiction in harmony with the court's character, and not infringing on the inherent powers of any other court, is valid.'

"Let us how examine the act for the purpose of ascertaining the duties therein imposed on the courts. It provides (section 1) that 'no action or proceeding in any court of record shall be open to objection on the ground

Miller v. Miller.

that a merely declaratory judgment, decree or order is sought thereby, and the court may make binding declarations of rights whether any consequential relief is or could be claimed, or not, including the determination, at the instance of any one claiming to be interested under a deed, will or other written instrument, of any question of construction arising under the instrument and a declaration of the rights of the parties interested.'

"The courts are not thereby required to pass on moot cases or to answer abstract questions of law. There must be an action or proceeding brought in the court by petition or bill of complaint. This must be determined in the usual way except as modified by the provisions of the act. The rights of the parties must be declared—that is, determined and stated—and, when ready to be promulgated in the legal form of a judgment, decree, or order, it shall not be subject to the objection that no consequential relief is or could be claimed thereunder. In the action or proceeding, all of the parties to be affected by the determination of the court must be made parties. The judgment, decree, or order, declaring the rights of the parties, is final and binding upon all such parties, though unenforceable, so far as issuing execution or mandatory process is concerned, without further application to the court under section 3. To entitle such an action or proceeding to be brought, there must be an actual, concrete controversy, a *bona fide* contest over asserted, existing legal rights. All of the parties interested must be brought before the court. A trial must be had of the issues presented in the usual way. The court must determine the rights of all the parties interested in the controversy and a judgment, decree or order entered conforming to such determination.

The act does not authorize a mere declaration of obligation. It is only when the plaintiff has rights in the matter, in respect of which the declaration is sought, that a declaration of rights can be made. In my opinion, the performance of such duties is an exercise of judicial power and no other duties are imposed on the courts by this act.

"The conclusion thus reached leads to a consideration of what I deem to be the only doubtful question presented: Does the lack of power under the act to enforce obedience to the determination of the court by award of execution or mandatory process render the proceeding nonjudicial? I cannot so conclude. Neither do I find that this element has usually been included in defining such power."

In support of his opinion that the performance of the duties prescribed by the act there in question is an exercise of judicial power, and no other duties were imposed on the courts by the act, he quoted from the following authorities:

" 'To adjudicate upon and protect the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial department.' Cooley's Constitutional Limitations (7th Ed.), p. 132.

" 'The primary functions of the judiciary are to declare what the law is, and to determine the rights of parties conformably thereto.' 12 C. J., p. 871.

" 'All powers, however, even though not judicial in their nature, which are incident to the discharge by the courts of their judicial functions, are inherent in the courts.' 12 C. J., p. 873.

Miller v. Miller.

" 'The term "judicial power" includes both the power to determine controversies and to interpret laws.' 6 Am. & Eng. Enc. Law (2 Ed.), p. 1053.

" 'The office of a judicial opinion under the common-law system is to set out the grounds upon which a legal controversy is decided in favor of one litigant and against the other, and incidentally to serve as a guide for determining similar controversies in the future.' 6 Am. & Eng. Enc. Law (2d Ed.), p. 1065. . . .

"In *Risser* v. *Hoyt,* 53 Mich., 185, 193, 18 N. W., 615, it is said: 'The judicial power referred to is the authority to hear and decide controversies, and to make binding orders and judgments respecting them.' "

It will be noted that Mr. Justice SHARPE, in his dissenting opinion, construed the Michigan act as providing for declaratory judgments only in actions or proceedings in which there exist "an actual, concrete controversy, a *bona fide* contest over asserted, existing legal rights."

In addition to the authorities already referred to defining judicial power, the following cases may be cited: *Landowners* v. *People,* 113 Ill., 296; *People* v. *Chase,* 165 Ill., 527, 46 N. E., 454, 36 L. R. A., 105; *People* v. *Simon,* 176 Ill., 165, 52 N. E., 910, 44 L. R. A., 801, 68 Am. St. Rep., 175; *Arms* v. *Ayer,* 192 Ill., 601, 61 N. E., 851, 58 L. R. A., 277, 85 Am. St. Rep., 357.

In these cases it is said that judicial power is the power which adjudicates upon and protects the rights and interests of individual citizens, and to that end construes and applies the law.

In *State* v. *Le Clair,* 86 Me., 522, 30 Atl., 7, and *Armstrong* v. *Murphy,* 65 App. Div., 126, 72 N. Y. Supp., 475,

149 Tenn.—31.

judicial power is defined to be the power to hear and determine controversies between adverse parties and questions in litigation.

In *Grider* v. *Tally*, 77 Ala., 422, 54 Am. Rep., 65, judicial power is defined as the authority vested in some court, officer, or person to hear and determine when the rights of persons or property or the propriety of doing an act is the subject-matter of adjudication.

That the jurisdiction conferred by a statute similar to the one under consideration relates to the exercise of a judicial function by the court is recognized *In re Ungaro* (1917), 88 N. J. Eq., 25, 102 Atl., 244. In that case the court considered the effect of the Chancery Act (Pamph. Laws 1915, p. 184), section 7, which provides, in effect, that any person claiming a right cognizable in a court of equity, under a will or other instrument, may apply for the construction thereof, so far as the same affects such right, and for a declaration of the rights of the persons interested. As to the statute there involved, the court said that at first blush it might seem that the words "cognizable in a court of equity" were intended to limit the court to the construction of an instrument in the class of cases in which the jurisdiction of the court was then asserted, which, in the case of a will, could only be construed incidentally to afford some relief between the parties, and observe that if this were the meaning of the act it would be merely a declaratory statute; but there was no reason for passing a declaratory act on the subject, there being no doubt about the jurisdiction of its limitation. The conclusion was, therefore, reached that the purpose of the act was to enlarge the jurisdiction of the court, thereby enabling it to make declaratory orders in the construc-

Miller v. Miller.

tion of wills and other instruments, and that petitioner in that case was authorized to so amend her petition as to charge specifically the claim of other persons with reference to her estate as legatees and devisees, making them defendants, and praying for the specific construction of the will, and a declaration of the rights she was advised she was entitled to have made by the court.

It is apparently settled under the English practice acts and orders that the right of the courts to make declaratory judgments is not dependent upon any right in the parties to the litigation to consequential relief.

In *Simmonds* v. *Newport Abercarn Black Vein Steam Coal Co.,* [1921] 124 L. T. N. S. (Eng.) 557, in discussing the question of jurisdiction under Order XXV, rule 5, to make a declaration as to the duty of the employer of a minor to make a statement of the manner in which his wages are made up, in compliance with an act requiring employers to make such statement, the court said:

It is "argued that there was no jurisdiction under Order XXV, rule 5, to make the declaration claimed, because, as he said, the court cannot grant relief in the matter in dispute between the parties. The words of the rule are: 'No action or proceeding shall be open to objection, on the ground that a merely declaratory judgment or order is sought thereby, and the court may make binding declarations of right whether any consequential relief is or could be claimed, or not.' I do not follow the argument that the court cannot grant relief in the matter in dispute, unless it means that the appellants do not propose to act upon any declaration made in favor of the respondent; but surely a declaration by the High Court of Justice of a

plaintiff's rights in a dispute between him and his employer is of itself a granting of relief at least as great as a conviction of the employer in a court of summary jurisdiction. . . ."

To the same effect is the rule announced in *Guaranty Trust Company* v. *Hannay*, [1915] 2 K. B. (Eng.) 562, 12 A. L. R. 1; *Dyson* v. *Attorney General*, [1912] 1 Ch. (Eng.) 158, 105 L. T. N. S., 753; *Burghes* v. *Attorney-General*, [1912] 1 Ch. (Eng.) 173, 105 L. T. N. S. 758.

In *Muskrat* v. *United States,* supra, and the other decisions of the Supreme Court of the United States relied on by the majority in the Anway Case to support its holding that the act there involved was unconstitutional, no actual controversy existed between the opposing parties. An examination of the federal Constitution (article 3, section 2) discloses that the judicial power of the court is limited to cases and controversies. Therefore we do not think that the case of *Muskrat* v. *United States,* and the other federal decisions cited in the majority opinion in the Anway Case, are controlling in the instant cause.

Without further elaboration, we are of the opinion that the act under consideration does not violate any provision of our constitution, and is therefore a valid statute.

As to the necessity of a bona fide controversy as to which the judgment will be *res judicata,* it was announced in *Russian Commercial & I. Bank* v. *British Bank* (Eng.), reported in 19 A. L. R., 1101, that the rule in Scotland, where the action of declarator has existed for hundreds of years, is that the question must be a real, and not a theoretical, question; the person raising it must have a real interest to raise it; he must be able to secure the proper contradicter, that is to say, some one presently

Miller v. Miller.

existing who has a true interest to oppose the declaration sought.

In *Barwick* v. *Southeastern & C. R. Co.,* [1921] 1 K. B. (Eng.), 187, 124 L. T. (N. S.), 71, the question is discussed as to declaratory judgments. DARLING, J., in the court below, reported in connection with the opinion of the court of appeals in 124 L. T. N. S., 71, after quoting from *Guaranty Trust Co.* v. *Hannay,* supra, said:

"Here it is impossible to say that the plaintiffs are not very much interested in the subject-matter of the declarations which they ask."

And it is assumed that there was no cause of action, but that the effect of the rule authorizing (Order XXV, rule 5) still is that there remains a general power of court to make the declarations. Continuing, he said:

"The question then arises, What is the limit? PICKFORD, L. J., says that a declaration may be made at the instance of any party who is interested in the subject-matter of the declaration. Here, to my mind, it is impossible to say that the plaintiffs are not very much interested, indeed, in the subject-matter of the declaration which they ask. Then, what limit does the Lord Justice say should exclude any person? The only limit, as the Lord Justice says, is that the rule does not extend to enable any stranger to the transaction to go and ask the court to express its opinion in order to help him in other transactions. I have to see whether the plaintiffs are strangers, who only want to get the opinion of the court for their assistance in other transactions. I come to the conclusion that what they want is to get the opinion of the court to decide this very question of whether the defendant companies are liable to be assessed because they occupy land within the parish

of Dover; that is the only point. Even if they do occupy land within the parish of Dover, it would still be open to them to say, 'We have not the beneficial occupation of the land,' and they might still escape payment of the rate; but it seems to me that this is a question which does affect the plaintiffs and the defendants. Are they strangers? It is obvious that what the plaintiffs want decided affects very much what is in dispute between them and the railway companies; it is, therefore, not another matter as to which they want the decision. They are not strangers. It is not necessary for me to go through the correspondence. It has been read, and I need not read it again. The letters which especially influence me in coming to the conclusion that these parties are not strangers, that they are really, both of them, interested in getting the question decided, are the letters. . . . Having regard to these letters, I come to the conclusion that the plaintiffs here are not strangers; that they do want the question decided, which is really a burning question between them and the defendant."

In the court of appeal, Lord READING, C. J., referring to *Guaranty Trust Co.* v. *Hannay,* reported in 12 A. L. R. 1, said:

"I think the plaintiffs were interested in the subject-matter, as were also the defendants. I find no authority which would preclude the court from making the declaration. Indeed, in both decisions relied upon, I find support for the proposition that in an exceptional case where it is reasonably necessary for the purpose of doing justice, and where the declaration is sought by a party who is interested in the subject-matter of the litigation, the court could and should make the order. . . ."

Miller v. Miller.

It follows, therefore, from the foregoing authorities, that the only controversy necessary to invoke the action of the court and have it to declare rights under our declaratory judgment statute is that the question must be real, and not theoretical; the person raising it must have a real interest, and there must be some one having a real interest in the question who may oppose the declaration sought. It is not necessary that any breach should be first committed, any right is invaded, or wrong done. The purpose of the act, as expressed in section 12 thereof, is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

. The court may, however, refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

We think complainants have such an interest in the will of R. T. Miller, deceased, as entitled them to a declaration under the act which will declare and settle the right of the complainant, Mrs. Miller, to sell any portion of the real estate devised in the third clause of her husband's will, if she deems it necessary for the support and use or benefit of herself and children, and make a good and sufficient title to the same; and they have the proper contradicter in the person of defendant.

We think the broad and comprehensive language used by the testator in the third clause of his will vests in his widow such right. We think she is given the unrestricted right to sell any portion or all of said real estate, if, in her judgment, she deems it necessary for the support, use or

benefit of herself and children, and that her judgment with regard thereto is not subject to review or control by the court.

In *Matthews* v. *Capshaw*, 109 Tenn.; 480, 72 S. W., 964, 97 Am. St. Rep., 854, the testator devised all of his property to his wife during her life or widowhood, and authorized her, in case of necessity to sell any of it for the benefit of the family, the same as he could for himself.

This court held that she was the sole judge as to the necessity of selling the property, and a sale of it by her was valid, though no actual necessity was shown to exist.

In *Bedford* v. *Bedford*, 110 Tenn., 211, 75 S. W., 1017, it was said:

"The power of sale vested in the executors being coupled with an interest, and a trust created, the survivors are fully authorized to execute the power originally vested in all three, and a sale made by those now living, or the survivors of them, in the execution of such power, will be valid and effective to pass the title to the property. The exercise of their discretion as to the necessity or propriety of a sale instead of a division will be conclusive, and not subject to review."

To the same effect is the rule announced in *Fitzgerald* v. *Standish*, 102 Tenn., 389, 52 S. W., 294.

It results that the decree of the chancellor will be reversed and a decree will be entered in this court in accordance with this opinion adjudging that Mrs. Miller's right to sell any portion of the real estate devised by the will of her deceased husband, if she should deem it necessary to do so for the support, use, and benefit of herself and children, and make a good title to said real estate, is absolute.

Miller v. Miller.

The costs of the cause are taxed against complainants, and will be paid by Mrs. Miller, the executrix, out of any funds in her hands belonging to the estate, if there be such funds in her hands.