# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### (HEARD AT SHELBYVILLE)

FOR PUBLICATION

| | | |
|---|---|---|
| THE CITY OF WHITE HOUSE, | ) | **Filed:** October 12, 1998 |
| | ) | |
| Appellant, | ) | Hon. Tom E. Gray, |
| | ) | Chancellor |
| Vs. | ) | |
| | ) | SUMNER CHANCERY |
| LAWRENCE RAY WHITLEY, | ) | |
| District Attorney General for the | ) | Supreme Court |
| Eighteenth Judicial District of the State of | ) | No. 01S01-9711-CH-00259 |
| Tennessee, JOHN CARNEY, District | ) | |
| Attorney General for the Nineteenth Judicial | ) | |
| District of the State of Tennessee and | ) | |
| STATE OF TENNESSEE, | ) | |
| | ) | |

**FILED**

**October 12, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | |
|---|---|
| Appellees, | ) |
| | ) |
| AND | ) |
| | ) |
| TAYLOR (TED) EMERY, Sheriff for Robertson | ) |
| County, Tennessee; J.D. VANDERCOOK, | ) |
| Sheriff for Sumner County, Tennessee, | ) |
| | ) |
| Defendants. | ) |

| FOR APPELLANT: | FOR AMICUS CURIAE: | FOR APPELLEES: |
|---|---|---|
| **City of White House** | **NonLawyer General** | **Whitley & Carney** |
| David Amonette | **Sessions Judges of** | John Knox Walkup |
| Gallatin, Tennessee | **Claiborne, Greene,** | Attorney General & Reporter |
| | **Lake and Obion Counties** | |
| | Douglas T. Jenkins | |
| | Rogersville, Tennessee | Michael E. Moore |
| | | Solicitor General |
| | And | |
| | | Gordon W. Smith |
| | W. Lewis Jenkins, Jr. | Associate Solicitor General |
| | WILKERSON, GAULDIN | Nashville, Tennessee |
| | & HAYES | |
| | Dyersburg, Tennessee | |

# O P I N I O N

COURT OF APPEALS AFFIRMED.                    DROWOTA, J.

In this appeal, we are confronted with the question of whether Article I, Section 8 of the Tennessee Constitution precludes non-attorney judges from presiding over trials of criminal offenses which are punishable by incarceration.[1] We have determined that individuals charged with a criminal offense punishable by incarceration are constitutionally entitled to have an attorney judge preside at the trial. However, this right may be waived in a manner consistent with the provisions of Rule 5(c), Tenn. R. Crim. P. The principles announced herein apply to (1) all cases tried or retried after the date of this opinion, and (2) to all cases on appeal in which the due process issue has been raised in the trial court and preserved as a ground for appeal. Accordingly, the judgment of the Court of Appeals is affirmed.

## BACKGROUND

The City of White House lies in both Sumner and Robertson Counties. The City was incorporated under a mayor and aldermanic charter in 1971 pursuant to state law.[2] At the time of its incorporation, the enabling statutes did not provide for a municipal judge, and in fact, provided that the mayor had "all the powers of a justice of the peace within the municipality, for the purpose of keeping the peace and trying offenses against any ordinance or the laws of the state."[3] In 1973, the

---

[1]Oral arguments were heard in this case on April 2, 1998, in Shelbyville, Bedford County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

[2]Tenn. Code Ann. §§ 6-101 & 6-134 (1971 Repl.) repealed in 1991 and replaced by Tenn. Code Ann. §§ 6-1-101 through 6-4-402 (1992 Repl. & Supp. 1997).

[3]Tenn. Code Ann. § 6-132 (1971 Repl.).

General Assembly enacted a statute[4] to empower the governing body of a municipality to establish the office of municipal judge by ordinance. The statute did not prescribe specific qualifications for the office, but instead left the matter of the judge's qualifications to a city's governing body.

From 1973 until 1988, the mayor and board of aldermen of White House appointed various lawyers to serve as municipal judge. When the person serving as municipal judge resigned in 1988, the mayor and board of aldermen, following a practice common in other parts of the state, requested the general sessions judges from Robertson and Sumner County to act as municipal judge for the City of White House. The general sessions judge from Sumner County presided over the cases arising in the part of the city located in Sumner County, and the general sessions judge from Robertson County presided over the cases arising in the part of the city located in Robertson County. Both these general sessions court judges were licensed attorneys. This arrangement continued for two years, but from 1990 to 1994, the general sessions judge of Sumner County served as the sole municipal judge for the City of White House.

Upon her resignation in 1994, the Mayor and Board of Aldermen, pursuant to state statutes,[5] enacted an ordinance establishing a municipal court with a popularly elected judge. The ordinance authorized the municipal judge "to exercise jurisdiction concurrent with courts of general sessions in all cases

---

[4]Tenn. Code Ann. § 17-123 (Supp. 1973). These statutes, as amended, are now codified at Tenn. Code Ann. §§ 16-18-101 & 16-18-102 (1994 Repl.).

[5]Tenn. Code Ann. §§ 16-18-201 through 16-18-207 (1994 Repl.).

involving the violation of the criminal law of the State within the corporate limits of the city...." The ordinance contained age, residence, and minimum education requirements but did not require the municipal judge to be licensed to practice law in Tennessee.[6]

In August of 1994, the residents of White House elected Charles R. Bobbitt, Jr., to the office of municipal judge. The parties to this appeal stipulated in the trial court that Mr. Bobbitt meets all state constitutional and statutory requirements to hold the office of municipal judge. However, Mr. Bobbitt is not a licensed attorney.

Following his election, the appellees, District Attorneys General for the Eighteenth and Nineteenth Judicial Districts, declined to prosecute in the White House Municipal Court violations of state statutes occurring within the White House city limits. Instead, they chose to prosecute these cases in the General Sessions Courts of Robertson or Sumner Counties. The appellees' decision was based upon a concern that prosecuting state warrants in the White House Municipal Court might be a violation of due process because Judge Bobbitt was not a licensed attorney. The concerns of the appellees were echoed by the Tennessee Attorney General and Reporter who rendered a formal opinion on June 16, 1994, stating that, as a non-attorney judge, Judge Bobbitt might be disqualified by due process "from disposing of cases involving adults where such

---

[6]The qualification section of the ordinance provides as follows: "The municipal judge shall be a resident of the City of White House one year and a resident of Tennessee five years immediately preceding his/her election and at least 30 years of age. In addition, the municipal judge shall be a graduate, with a B.S./B.A. degree from an accredited institution of higher education."

-4-

cases involve the possibility of incarceration or other deprivation of liberty." Op. Att'y Gen. U94-91 (June 16, 1994). The State Attorney General's opinion was based in large part upon a prior decision of this Court holding that non-attorney judges may not consistently with due process preside over juvenile delinquency hearings where the juvenile faces the possibility of confinement or other loss of liberty. State ex rel. Anglin v. Mitchell, 596 S.W.2d 779, 791 (Tenn. 1980).

Preferring to avoid the time and expense of requiring their city police officers to travel to either Gallatin, in Sumner County, or Springfield, in Robertson County, to prosecute violations of state law occurring within the city limits, White House city officials asked the district attorneys general to reconsider their position. When the appellees declined, the City of White House filed suit in Chancery Court in Sumner County seeking declaratory and injunctive relief.

Following oral argument, and after consideration of the facts as agreed upon by the parties and the record, the trial court filed an opinion concluding that neither the Constitution, nor statutes of Tennessee require municipal judges to be licensed to practice law or learned in the law. Therefore, the trial court declared that "[c]oncurrent jurisdiction and authority with courts of general sessions as set forth in Title 40 in all cases of the violation of criminal laws of the State of Tennessee within the limits of the municipality exists in the White House City Court." However, the trial court declined to issue a writ of mandamus directing the district attorneys general to prosecute state warrant violations in the White House Municipal Court, and also declared that the municipal judge had no authority to order the Sumner County Sheriff to incarcerate prisoners in the absence of a

contract between White House and Sumner County.[7]

The district attorneys appealed the trial court's judgment, and the Court of Appeals reversed, concluding that Article I, Section 8 of the Tennessee Constitution as interpreted by this Court in State ex rel Anglin v. Mitchell, supra, prohibits non-attorney judges from presiding over the trial of a defendant for an offense punishable by incarceration. Thereafter, we granted the City of White House permission to appeal to decide this important issue of constitutional law. For the reasons herein stated, we affirm the judgment of the Court of Appeals.

**DUE PROCESS**

Before addressing the central issue in this appeal, we will briefly address the contention of the *amicus curiae* that this appeal does not present a justiciable controversy. This Court in Miller v. Miller, 149 Tenn. 463, 261 S.W. 965 (1924), explained the concept of justiciable controversy under the Declaratory Judgment Act as follows:

> the only controversy necessary to invoke the action of the court and have it to declare rights under our declaratory judgment statute is that the question must be real, and not theoretical; the person raising it must have a real interest, and there must be some one having a real interest in the question who may oppose the declaration sought. It is not necessary that any breach should be first committed, any right invaded, or wrong done. The purpose of the act, as expressed in section 12 thereof, is to 'settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.'

261 S.W. at 972; see also Cummings v. Beeler, 189 Tenn. 151, 156, 223 S.W.2d

_____

[7]The Sheriffs of Sumner and Robertson Counties are not parties to this appeal.

-6-

913, 915 (1949). Applying that test, we conclude that this appeal presents a justiciable controversy. The issue is real not theoretical. The municipal judge in White House is not an attorney,[8] yet the city ordinance grants to him jurisdiction concurrent with courts of general sessions, including jurisdiction to preside over criminal cases in which incarceration is a possible punishment. The Attorney General of this State has opined that due process may preclude a non-attorney judge "from disposing of cases involving adults where such cases involve the possibility of incarceration or other deprivation of liberty." In that opinion, the Attorney General relied upon a published decision of this Court. The City of White House has an interest in the outcome of this appeal because it directly affects the scope of cases which can be decided by its municipal judge. The District Attorney Generals have an interest in the outcome of this appeal as a result of their statutory duty to prosecute violations of state criminal laws. At present, it is not clear whether that duty can be constitutionally fulfilled by prosecuting cases in the White House City Court. For all these reasons we conclude that this appeal presents a justiciable controversy. Therefore, we will now consider whether Article I, Section 8 of the Tennessee Constitution precludes non-attorney judges from presiding over trials of criminal offenses which are punishable by incarceration.

In this Court, the City of White House asserts that the Court of Appeals erred in reversing the judgment of the trial court because the White House

---

[8]Recently, we granted the motion of the appellees to consider as post-judgment facts the following: On August 6, 1998, Susan Johnson, a licensed attorney, was elected to the office of White House City Judge. These facts do not render this appeal moot, however. This appeal involves a question of great public importance which is likely to recur in that a considerable number of the municipal and general sessions judges in Tennessee are non-lawyers. McCanless v. Klein, 182 Tenn. 631, 637, 188 S.W.2d 745 (1945); Dockery v. Dockery, 559 S.W.2d 952, 954 (Tenn. App. 1977).

-7-

Municipal Judge satisfies all constitutional and statutory requirements to hold the office, which do not include being licensed to practice law. The appellees, while agreeing that no statute or constitutional provision requires the White House Municipal Judge to be a licensed attorney as a condition of holding office, nonetheless assert that Article I, Section 8 of the Tennessee Constitution prohibits a non-attorney judge from presiding over a criminal proceeding which may result in a citizen's incarceration.

We agree with the appellees. There is no general statutory or constitutional provision which mandates that a municipal judge be licensed to practice law.[9] The relevant statute requires a popularly elected municipal judge to "meet the requirements established in article VI, § 4 of the Constitution of Tennessee for judges of inferior courts." Tenn. Code Ann. §16-18-202 (1994 Repl.). Article VI, Section 4 provides that the

> Judges of the Circuit and Chancery Courts, and of other inferior Courts, shall be elected by the qualified voters of the district or circuit to which they are to be assigned. Every Judge of such Courts shall be thirty years of age, and shall before his election, have been a resident of the State for five years and of the circuit or district one year. His term of service shall be eight years.

Therefore, neither the statute nor the Constitution require that a municipal judge be a licensed attorney as a condition of holding office. However, as recognized by the appellees, the issue in this appeal is not whether a municipal judge must be a licensed attorney as a condition of holding the office. Instead, the issue is whether a non-attorney municipal judge may constitutionally preside over the trial

_____

[9]We recognize that municipal judges of cities having a population in excess of 160,000 under the 1980 census or any subsequent federal census must be authorized to practice law in the courts of Tennessee. Tenn. Code Ann. § 17-1-106(d) (1994 Repl.).

of criminal offenses which are punishable by incarceration.

As previously stated, the White House Municipal Court has criminal jurisdiction "concurrent with courts of general sessions in all cases involving the violation of the criminal laws of the State within the corporate limits of the city. . . ." Courts of general sessions are vested with jurisdiction to

> try and determine and render final judgment in all misdemeanor cases brought before the court by warrant or information wherein the person charged with such misdemeanor enters a plea of guilty in writing or requests a trial upon the merits and expressly waives an indictment, presentment, grand jury investigation and jury trial. Such waiver shall be in writing as provided in Rule 5 of the Tennessee Rules of Criminal Procedure. In such cases, the trial shall proceed before the court without the intervention of a jury, and the court shall enter such judgment, and, as an incident thereto, may inflict such punishment within the limits provided by law for the particular offense as the court may determine proper under the peculiar circumstances of such case.

Tenn. Code Ann. § 40-1-109 (1997 Repl.). Except as specifically provided by statute, all state misdemeanor offenses are punishable by incarceration. Tenn. Code Ann. § 40-35-111(e) (1997 Repl.). Therefore, in virtually every state misdemeanor case brought before the White House Municipal Court, the potential for incarceration of the defendant exists.

In determining whether a non-attorney judge may preside over a criminal trial potentially resulting in a deprivation of liberty, we begin with the language of Article I, Section 8

> That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

-9-

In State ex rel. Anglin v. Mitchell, supra, this Court concluded that an adjudication of delinquency and a commitment to the Department of Corrections by a non-attorney judge violates the due process guaranteed by the "law of the land" portion of this constitutional provision. In Anglin, this Court emphasized that "[d]ue process of law is the primary and indispensable foundation of individual freedom," and the "basic and essential term in the social compact which defines the rights of the individual and delimits the powers which the state may exercise." Id., 596 S.W.2d at 785, (quoting In re Gault, 387 U.S. 1, 20, 87 S.Ct. 1428, 1439-40, 18 L.Ed.2d 527 (1967)). As a result of its very important role in our society, due process is not a static legal principle, but, in a free society, it is an advancing standard consisting of those basic rights which are deemed reasonable and right. Id., 596 S.W.2d at 785-86, (citing Wolf v. Colorado, 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949)).

While recognizing in Anglin that, historically, the due process right to a fair trial in a fair tribunal did not include the right to an attorney judge, this Court emphasized that the due process right to a fair trial had advanced to guarantee to adult and juvenile criminal defendants the right to representation by counsel. Id., 596 S.W.2d at 786-88. In concluding that due process had also necessarily advanced to guarantee the right to an attorney judge in a delinquency adjudication, this Court explained that "[t]he right to counsel becomes 'as sounding brass, or a tinkling cymbal' if there is not a concomitant right to a trial before a qualified judge." Id., 596 S.W.2d at 788. While commending non-attorney juvenile judges for their conscientious efforts to address the complex legal questions presented them for resolution, this Court stated that "good

-10-

intentions are of no constitutional consequence" and concluded that due process mandates a law trained judge preside over a delinquency proceeding involving a deprivation of liberty. Id.

While Anglin involved a juvenile court adjudication of delinquency, the rationale of that decision applies with equal force in the context of this appeal. As this Court recognized in Anglin, a criminal defendant has a constitutional right to representation by a legally qualified attorney. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). To require a lesser standard of a judge presiding over the trial of a criminal offense punishable by incarceration would defeat the constitutional purpose of the right to counsel. With respect to the importance of the right to counsel, the United States Supreme Court stated in Powell v. Alabama,

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

287 U.S. 45, 68-69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). Certainly, as we recognized in Anglin, it is inherently inconsistent to guarantee the right to counsel without also giving the defendant the right to have an attorney judge when the

-11-

proceeding may result in a deprivation of liberty. Since our legal system regards denial of counsel as a denial of fundamental fairness, it logically follows that the failure to provide a judge qualified to comprehend and utilize counsel's legal arguments likewise is a denial of due process.

By so stating, we do not suggest that a fair trial is impossible in a court presided over by a non-attorney judge. Indeed, we recognize and commend the valuable contribution which non-attorney judges have made to the administration of justice in this State. Historically, compelling reasons existed for allowing laypersons to act as judges. Communities were sparsely settled, transportation was slow, communication was difficult, few lawyers were available, and the law was not as complex as it is today. See Comment, "Constitutional Law - Due Process - Permitting Non-Attorney Judges to Preside Over Criminal Trials in Which the Offense is Punishable by a Jail Sentence Violates Defendants' Fundamental Right to a Fair Trial," 28 Van.L.Rev. 421, 423-34 (1975); see also Gordon v. Justice Court for Yuba Judicial District of Sutter County, 525 P.2d 72, 75 (Cal. 1974). The initial justifications permitting non-attorney judges to preside over trials of criminal offenses punishable by incarceration, however, no longer exist in modern society. There has been a vast increase in the number of attorneys and tremendous improvements in transportation and communication. Furthermore, and perhaps most importantly, the increased complexity of criminal law and criminal procedure has greatly enhanced the probability that a layperson judge will be unable to deal effectively with the complexities inherent in a criminal trial. In light of these societal and legal changes, we hold that the due process protections of Article I, Section 8 of the Tennessee Constitution guarantee to a

criminal defendant on trial for an offense punishable by incarceration the right to be tried before an attorney judge. See also Gordon, 525 P.2d at 74; State v. Dunkerley, 365 A.2d 131 (Vt. 1976).

In so holding, we reject the rationale of North v. Russell, 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976), in which the United States Supreme Court concluded that since, on appeal, a de novo trial before a lawyer was available, an adult accused of a misdemeanor for which he may be imprisoned is not denied due process of law under the federal constitution when he is initially tried before a non-attorney judge. In this jurisdiction, an accused who is tried and convicted of a criminal offense in a court exercising general sessions jurisdiction has the right to a de novo appeal before an attorney judge in either the circuit or criminal court. Tenn. Code Ann. § 27-3-131 (1997 Supp.); § 27-5-108 (1980 Repl.); Tenn. R. Crim. P. 5(c). In our view, the due process violation resulting from the lack of an attorney judge is not cured by the statutory right to a de novo appeal. As this Court stated in Anglin, "[w]e cannot countenance and classify as constitutional any procedure whereby it is necessary that a citizen stand two trials in order to get one fair trial." Id., 589 S.W.2d at 790. In our view, a person accused of a criminal offense punishable by incarceration is entitled to a determination of his status with the full panoply of rights designed to achieve justice at the earliest hearing on the merits. It is unreasonable to require an appeal in order to obtain access to all the safeguards deemed essential for a fair trial. The second hearing will not only re-create anxiety, insecurity, and strain, but is likely to be time consuming, expensive, and burdensome as well. Anglin, supra; Gordon, 525 P.2d at 77-78.

-13-

While we are bound by the interpretation given to the United States Constitution by the Supreme Court of the United States, as to Tennessee's Constitution, we sit as the court of last resort. Although we may not restrict the protections afforded by the federal constitution, we may interpret the Tennessee Constitution to impose higher standards and stronger protections. Miller v. State, 584 S.W.2d 758, 760 (Tenn. 1979). In accordance with our authority and responsibility as the court of last resort in this State, we hereby hold that Article I, Section 8 of the Tennessee Constitution guarantees to citizens of this State accused of a criminal offense punishable by incarceration the right to a trial before an attorney judge.

By so stating, we do not hold that municipal or general sessions judges must be licensed attorneys to hold office or to exercise other duties and jurisdiction.[10] Such judges may still function in civil cases and in criminal cases not involving potential incarceration. Moreover, even in criminal cases where incarceration may be imposed, a non-attorney judge may act so long as the defendant waives the due process right to have the proceedings presided over by an attorney judge. See Gordon, 525 P.2d at 79; Shoemaker v. State, 375 A.2d 431, 442 (Del. 1977); Treiman v. State, 343 So.2d 819, 824 (Fla. 1977). The defendant may voluntarily relinquish the right to an attorney judge by executing a written waiver, consistent with the provisions of Rule 5(c), Tenn. R. Crim. P., governing waivers of the right to a trial by jury and to a grand jury investigation.

---

[10]Approximately twenty-two general sessions court judges in Tennessee are not licensed to practice law. In addition, approximately seventy-five municipal court judges are not licensed to practice law. Municipal Technical Advisory Service, University of Tennessee, Directory of Tennessee Municipal Officials (1996).

-14-

## CONCLUSION

Applying the foregoing principles to the facts of this appeal, we conclude that, in the absence of a written waiver by a criminal defendant consistent with the provisions of Rule 5(c), Tenn. R. Crim. Pro., the non-attorney municipal judge of the City of White House has no authority to preside over trials of criminal offenses punishable by incarceration. Accordingly, the judgment of the Court of Appeals is affirmed. The principles announced herein apply to (1) all cases tried or retried after the date of this opinion, and (2) to all cases on appeal in which the due process issue has been raised in the trial court and preserved as a ground for appeal.

_____\
FRANK F. DROWOTA, III,
JUSTICE

**CONCUR:**

Anderson, C.J.
Birch, J. and Russell, Sp.J.

Holder, J. - Separate Dissenting Opinion.